IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| AIG PROPERTY CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL DOCKET NO.: 3:15-cv-30111 |
| | ) | |
| TAMARA GREEN, THERESE SERIGNESE, | ) | |
| LINDA TRAITZ, and | ) | |
| | ) | |
| WILLIAM H. COSBY, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

The plaintiff, AIG Property Casualty Company ("AIG"), by and through its attorneys,

brings this Complaint for Declaratory Relief pursuant to the provisions of 28 U.S.C. § 2201

and Rules 8 and 57 of the Federal Rules of Civil Procedure. AIG seeks a judicial

determination of the respective rights of the parties under two insurance policies issued

to William H. Cosby, Jr. ("Cosby") for claims arising out of alleged sexual misconduct,

molestation, and/or harassment.

## THE PARTIES

1. Plaintiff AIG is an insurance company incorporated in the State of

Pennsylvania with its principal place of business in New York, New York.

2. Defendant Tamara Green ("Green") is an individual residing in California.

3. Defendant Therese Serignese ("Serignese") is an individual residing in

Florida.

4. Defendant Linda Traitz ("Traitz") is an individual residing in Florida.

5.     Defendant Cosby is an individual with a residence in Shelburne Falls, Massachusetts.

## JURISDICTION AND VENUE

6.     The United States District Court for the District of Massachusetts has original jurisdiction over this case pursuant to the provisions of 28 U.S.C. § 1291 and 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000.00 and this matter involves citizens of different states.

7.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the homeowners policy and personal excess policy at issue cover property and liability in Massachusetts, and a named insured is presently a defendant in a lawsuit pending in Massachusetts.

8.     Venue is also proper under 28 U.S.C. § 1391(b)(3), as the defendants are subject to the Court's personal jurisdiction with respect to this action, and as each defendant is already a party to another lawsuit pending in the District of Massachusetts.

9.     The District Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, and pursuant to Rule 57 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

### The Insurance Policies

10.     AIG issued Massachusetts Homeowners Policy No. PCG 006004261 (hereinafter the "Homeowners Policy") to Cosby.

11.     The Homeowners Policy was in effect from January 1, 2014 to January 1, 2015.

12.     A true and correct certified copy of the Massachusetts Policy redacted to remove the insureds' confidential and private information is attached hereto as Exhibit A.

13.     The Homeowners Policy states, in part, as follows:

## HOMEOWNERS COVERAGE - POLICY PROVISIONS

The insurance company named on your Declarations Page will provide the insurance described in this policy. You agree to pay the premium and comply with your responsibilities described in this policy.

Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine your rights and duties, and what is and is not covered. We have no duty to provide coverage unless there has been full compliance with policy PART IV - CONDITIONS.

## PART I - DEFINITIONS

Words with special meanings are defined here or in the part of the policy where they are used. Throughout the policy, defined terms will be bolded when used.

* * * *

**Occurrence** means:

**a.**     A loss or an accident, to which this insurance applies, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in **personal injury** or **property damage**; or

**b.**     An offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in **personal injury** or **property damage**.

* * * *

**Personal Injury** means the following injuries, or resulting death:

**a.**     **Bodily Injury**

* * * *

**c.**     Shock, emotional distress, mental injury;

* * * *

**e.**     Defamation, libel or slander;

* * * *

## PART III - LIABILITY

**A.     Insuring Agreement**

We will pay **damages** an **insured person** is legally obligated to pay for **personal injury** or **property damage** caused by an **occurrence** covered by this policy anywhere in the world, unless stated otherwise or an exclusion applies.

**B.     Payment of a Loss**

The most we will pay for all claims for **personal injury** and **property damage** as a result of any one **occurrence** is the Liability coverage limit shown on the Declarations Page of this policy.

\* \* \* \*

Payments under provision **C., Defense Coverage and Claim Expense**, except a settlement payment, are in addition to the Liability coverage limit in the policy shown on the Declarations Page.

**C.     Defense Coverage and Claim Expense**

We will pay the costs to defend an **insured person** against any suit seeking covered **damages** for **personal injury** or **property damage**, even if the suit is false, fraudulent or groundless. You may choose counsel from a panel of firms selected by us. If a panel counsel is not established in the jurisdiction where the suit is brought, we reserve the right to select counsel.

\* \* \* \*

**E.     Exclusions**

This policy does not provide coverage for liability, defense costs or any other cost or expense for:

\* \* \* \*

**9.**     Sexual Molestation or Corporal Punishment

**Personal injury** arising out of any actual, alleged or threatened by any person:

**a.**     Sexual molestation, misconduct or harassment;

\* \* \* \*

**c.**     Sexual, physical or mental abuse.

* * * *

14.     AIG issued Personal Excess Liability Policy No. PCG 006235889 (hereinafter "Excess Policy") to Cosby.

15.     The Excess Policy was in effect from January 1, 2014 to January 1, 2015.

16.     A true and correct certified copy of the Excess Policy redacted to remove the insureds' confidential and private information is attached hereto as Exhibit B.

17.     The Excess Policy provides, in relevant part, as follows:

PERSONAL EXCESS LIABILITY COVERAGE - POLICY PROVISIONS

* * * *

**PART I - DEFINITIONS**

Words with special meanings are defined here or in the part of the policy where they are used. Throughout the policy, defined terms will be bolded when used.

In this policy, the words "you", "your" and "yours" mean the person or persons named on the Declarations Page and his or her spouse who lives in the same household. The words "we", "us", "our" and "ours" mean the insurance company named on the Declarations Page. Also, in this policy, the word(s):

* * * *

**Occurrence**   means:

    **a.**   An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which first results during the Policy Period in **bodily injury** or **property damage**; or

    **b.**   An offense, including a series of related offenses, committed during the Policy Period that results in **personal injury**.

**Personal injury**   means the following injuries, or resulting death;

    **a.**   **Bodily Injury**

* * * *

    **c.**    Shock, emotional distress, mental injury;

* * * *

    **e.**    Defamation, libel or slander;

* * * *

## PART II - WHAT IS COVERED

**A.**    **EXCESS LIABILITY**

    **1.**    **Insuring Agreement**

    We will pay **damages** an **insured person** is legally obligated to pay because of **personal injury** or **property damage** caused by an **occurrence**, covered by this policy anywhere in the world:

    **a.**    In excess of **damages** covered by the required underlying insurance or the Minimum Required Underlying Limit, whichever is greater; or

* * * *

## PART V - WHAT IS NOT COVERED - EXCLUSIONS

**A.**    **As respects Excess Liability, Limited Employment Practices Liability and Limited Charitable Board Directors and Trustees Liability:**

This insurance does not provide coverage for liability, defense costs or any other cost or expense:

* * * *

* * * *

**B.**    **As respects Excess Liability, the following also applies:**

This insurance does not provide coverage for liability, defense costs or any other cost or expense:

* * * *

    3.    Sexual Misconduct

    Arising out of any actual, alleged or threatened:

**a.**     Sexual misconduct, molestation or harassment;

* * * *

18.     AIG also issued California Homeowners Policy No. PCG 0006004359, effective from January 1, 2014 to January 1, 2015, to 1500 Sorrento Drive, LLC as named insured.

19.     The pertinent terms of California Homeowners Policy No. PCG 0006004359 are identical in all material respects to the Massachusetts Homeowners Policy.

## Underlying Allegations

20.     In December 2014, Green filed a civil complaint against Cosby in the United States District Court for the District of Massachusetts, Western Division, a true and complete copy of which is attached hereto as Exhibit C.

21.     On January 5, 2015, Green, Serignese, and Traitz (together, the "Defamation Plaintiffs") filed an amended civil complaint against Cosby in the United States District Court for the District of Massachusetts, Western Division ("Amended Complaint"), a true and complete copy of which is attached hereto as Exhibit D.

22.     In the Amended Complaint, Green alleges that, in the early 1970s, Cosby solicited her assistance to raise money to establish a new club; that she and Cosby went to lunch; that Cosby offered her some red and grey pills that he represented were over-the-counter cold medicine; that she ingested the pills based on her belief that she was taking cold medicine; that the pills were not over-the-counter cold medicine, but instead were a narcotic or some other type of drug(s); that the pills caused her to feel weak, dizzy, and woozy; that Cosby intentionally drugged her into this altered state in order to facilitate a later sexual assault; that, after driving her to her apartment, and without her consent,

Cosby undressed himself and took off her clothes; and that Cosby then ran his hands all over her body, touching her breasts and vaginal area, and digitally penetrated her while masturbating.

23.     Green alleges that she first widely publicly disclosed this alleged sexual assault in an interview with the *Philadelphia Daily News* in February 2005, and then by appearances on various television shows.

24.     Green alleges that Cosby, by innuendo and effect, publically branded her a liar when, by and through his agent, authorized representative, lawyer, servant, and/or employee, Walter M. Phillips, Jr., Cosby responded that he did not know Green, that Green's allegations were "absolutely false," and that the incident "did not happen in any way, shape, or form."

25.     Green next alleges that Cosby continued his "pattern of branding [Green] as a liar" when, on or about February 7, 2014, *Newsweek* published an interview of Green in which she detailed the sexual assault, and also published a response attributed to Cosby's publicist, who Green believes was David Brokaw, in which Brokaw stated that the drugging and sexual assault never occurred, and that Green lied and was a liar.

26.     Green further alleges that Cosby again continued his "pattern of branding [Green] as a liar" when, on or about November of 2014, *The Washington Post* published an interview of Green in which she detailed the sexual assault, and also published a response attributed to Cosby's publicist, Phillips, in which Phillips stated that Cosby did not know Green, that the drugging and sexual assault against Green never occurred, and that Green lied and was a liar.

27.     Green alleges that Cosby's responses were publicized nationwide.

28.     In the Amended Complaint, Serignese alleges that, in the mid-1970s, she met Cosby in or near a gift shop at the Las Vegas Hilton; that Cosby approached her from behind, put his arm around her, and asked "Will you marry me?"; that Cosby invited her to his show at the Las Vegas Hilton, which she attended; that Cosby invited her to a room backstage after the show; that she went to the room; that, when Cosby and she were alone in the room, Cosby gave her two pills and told her to take them, which she did; that Cosby intentionally drugged her into an altered state of consciousness in order to facilitate a later sexual assault; that Cosby undressed himself and her and began to take advantage of her sexually; and that Cosby stood behind her, bent her over, sexually penetrated her, and raped her.

29.     Serignese alleges that she publicly disclosed this alleged sexual assault on or about November 19, 2014.

30.     Serignese alleges that, on November 21, 2014, Cosby, by and through his agent, authorized representative, lawyer, servant, and/or employee, Martin D. Singer, responded to Serignese's disclosure and to similar public accusations by multiple other women by issuing a written response that the assault never occurred and that Serignese lied and was a liar, which response was publicized nationwide.

31.     In the Amended Complaint, Traitz alleges that, in or about 1970, she became acquainted with Cosby through her work as a waitress; that on a certain date, she accepted a ride home from Cosby; that Cosby did not drive her home but instead drove her to a beach and parked the car; that Cosby opened a briefcase containing an assortment of pills and pressured her to take some of the pills to relax; that Cosby intended to drug her to facilitate a planned sexual assault; that she declined the pills; that

Cosby then became sexually aggressive, groped her breasts and vaginal area, pushed her down on the car seat, and attempted to lie on top of her; and that she resisted this assault.

32.    Traitz alleges that she publicly disclosed this alleged sexual assault on or about November 18, 2014 through a post on her personal Facebook page.

33.    Traitz alleges that Cosby, by and through Singer, responded to her disclosure by a statement given to numerous media outlets that Traitz was "the latest example of people coming out of the woodwork with unsubstantiated or fabricated stories about [Cosby]" and that "there was no briefcase of drugs."

34.    Traitz alleges that, on November 21, 2014, Cosby "continued his pattern of branding [Traitz] as a liar" when, by and through Singer, he issued a written response that the assault never occurred and that Traitz lied and was a liar, which response was publicized nationwide.

35.    Green, Serignese, and Traitz each allege a single, separate count of defamation in the Amended Complaint.

36.    In support of Green's defamation claim, Green claims that at all relevant times she enjoyed the respect, confidence, and esteem of her neighbors, as well as others in the community; that Brokaw's statement to *Newsweek* on or about February 7, 2014 and Phillips' statement to *The Washington Post* on or about November 22, 2014 were each made on Cosby's behalf and were each defamatory, not privileged, and false when made; that Brokaw and Phillips, at Cosby's direction, each gave their respective false response intentionally, notwithstanding their respective and/or Cosby's knowledge of its falsity, in reckless disregard of the truth, and/or in negligent disregard of the truth,

intending to injure Green and to deprive her of her good name and reputation; that Cosby's responses, through Brokaw and Phillips, were printed, published, circulated, and distributed by the news outlets to which they were made, and were widely read by Green's family, neighbors, friends, and diverse other persons; that Cosby's responses, each on their face, allegedly impugned Green's reputation, and tended to expose Green to public contempt, ridicule, aversion, or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation; and that, as a result, Green suffered damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, and/or occupation.

37.    In support of Serignese's defamation claim, Serignese claims that at all relevant times she enjoyed the respect, confidence, and esteem of her neighbors, as well as others in the community; that Singer's response on November 21, 2014 was defamatory, not privileged, and false when made; that Singer, within the course and scope of his employment and/or agency with Cosby, and Cosby, by and through Singer, gave this response intentionally, notwithstanding their respective knowledge of its falsity, in negligent and/or reckless disregard of the truth, and/or with actual malice, intending to injure Serignese and to deprive her of her good name and reputation; that Cosby's response, through Singer, was printed, published, circulated, and distributed by the news outlets to which it was made, and was widely read by Serignese's family, neighbors, friends, and diverse other persons; that Cosby's response, by and through Singer, on its face impugned Serignese's reputation, and tended to expose Serignese to public contempt, ridicule, aversion, or disgrace, to induce an evil opinion of her in the minds of

right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation; and that, as a result, Serignese suffered damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, and/or occupation.

38.     In support of Traitz' defamation claim, Traitz claims that at all relevant times she enjoyed the respect, confidence and esteem of her neighbors, as well as others in the community; that Singer's responses on or about November 20, 2014 and November 21, 2014 were defamatory, not privileged, and false when made; that Singer, within the course and scope of his employment and/or agency with Cosby, and Cosby, through Singer, gave these responses intentionally, notwithstanding their respective knowledge of their falsity, in reckless and/or negligent disregard of the truth, and/or with actual malice, intending to injure Traitz and to deprive her of her good name and reputation; that Cosby's responses, through Singer, were printed, published, circulated, and distributed by the news outlets to which they were made, and were widely read by Traitz' family, neighbors, friends, and diverse other persons; that Cosby's responses, by and through Singer, on their face impugned Traitz' reputation, and tended to expose Traitz to public contempt, ridicule, aversion, or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation; and that, as a result, Traitz suffered damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, and/or occupation.

## CLAIMS FOR DECLARATORY RELIEF

### Count I – Sexual Misconduct Exclusion

39.     The Plaintiff incorporates Paragraphs 1 through 36 as though fully set forth herein.

40.     The Homeowners Policy and the Excess Policy both define **personal injury** to include "[b]odily injury", "[s]hock, emotional distress, [and] mental injury," as well as "[d]efamation, libel or slander."

41.     The Homeowners Policy and the Excess Policy both explicitly and unequivocally exclude coverage for **personal injury** "arising out of" any actual, alleged, or threatened sexual misconduct, molestation, or harassment.

42.     The Defamation Plaintiffs' alleged **personal injury** arose out of, originated from, and/or emanated from Cosby's alleged sexual misconduct, molestation, or harassment because, without Cosby's conduct, as alleged, there would be no basis for suit as neither Cosby not anyone acting on his behalf would have made the allegedly defamatory statements.

43.     Neither the Homeowners Policy nor the Excess Policy requires AIG to provide coverage to Cosby for the Defamation Plaintiffs' claims because each of their claims arise out of Cosby's alleged sexual misconduct, molestation, or harassment.

## PRAYER FOR RELIEF

WHEREFORE, AIG respectfully requests that this Court:

a.      Enter a judgment declaring that AIG has no duty to defend or indemnify Cosby under the Homeowners Policy and/or the Excess Policy for the claims asserted in the underlying action;

b.      Enter a judgment declaring that the Defamation Plaintiffs are bound by this

Court's declarations in this matter;

c.      Award AIG its costs; and

d.      Grant such further relief as this Court deems just and proper.


                                        Respectfully submitted,
                                        AIG PROPERTY CASUALTY
                                        COMPANY,
                                        By its attorneys,


                                        /s/ William A. Schneider
                                        _____
                                        William A. Schneider, BBO #636421
                                        Gina M. Reppucci, BBO #679726
                                        250 Summer Street
                                        Boston, MA  02210
                                        Tel: (617) 439-7573
                                        Fax: (617) 342-4951
                                        wschneider@morrisonmahoney.com
                                        greppucci@morrisonmahoney.com

DATED: June 26, 2015