UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| **AIG PROPERTY CASUALTY COMPANY**<br><br>*Plaintiff,*<br><br>v.<br><br>**TAMARA GREEN, THERESE SERIGNESE,  LINDA TRAITZ, and WILLIAM H. COSBY, JR.**<br><br>*Defendants.* | Civil Action No.   3:15-CV-30111-MGM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF WILLIAM H. COSBY, JR.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY AIG PROPERTY CASUALTY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF** |

**I.     INTRODUCTION**

Mr. Cosby is a defendant in various lawsuits asserting defamation claims including, as this Court knows, one case pending in this Court.[1]  Mr. Cosby notified his insurers of these lawsuits, asking that they honor the express promises in their policies to defend him against defamation claims.  AIG Property Casualty Company agreed to do so under a reservation of rights.  However, rather than acting in Mr. Cosby's best interests, AIG launched not one, but two, separate lawsuits against Mr. Cosby on opposite coasts.  In doing so, AIG placed its interests ahead of Mr. Cosby's, jeopardizing his defense in the underlying litigation, forcing him to litigate on multiple fronts, and forcing him to divert time and financial resources.

AIG seeks to invoke the discretionary jurisdiction of this Court, rather than seeking a determination in state court—even though the issues implicated here focus on the application of state insurance law principles.  Furthermore, AIG seeks to have this Court and another federal court, the United States District Court for the Central District of California, resolve the exact same legal issue—whether an exclusion in the AIG insurance policies applicable only to specified acts of "sexual misconduct" clearly and conclusively applies to preclude coverage for claims of defamation allegedly occurring decades after any alleged sexual misconduct, even though some of the defamation claims do not even relate to any alleged sexual misconduct.

AIG has filed the declaratory judgment actions seeking to extricate itself from its coverage obligations despite the prejudicial ripple effect that pursuit of those actions would have on  underlying lawsuits, the regulation of discovery in underlying lawsuits,  and Mr. Cosby's ability to defend himself against  underlying lawsuits, and despite ample precedent dictating that AIG's declaratory relief claims should not be heard at this time.  AIG must wait its turn and allow for the progression of the underlying lawsuits instead of forcing multiple courts to address the same legal issues and overlapping factual issues, all with the risk of a multitude of conflicting

---

[1] *See* Declaration of Kimberly A. Umanoff ("Umanoff Decl.") at ¶¶ 3-4.  Mr. Cosby respectfully requests that the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of the operative complaints alleging defamation claims against Mr. Cosby, which are referenced in this motion, and which are attached to the declaration of Kimberly A. Umanoff as Exhibits A and B.

decisions.

As the Supreme Court and many other courts have recognized for more than 100 years, while insurers do have the right to seek appropriate declaratory relief, that right is not unfettered. AIG's rush to extinguish its coverage obligations should not be indulged in light of precedent favoring abstention by federal courts facing declaratory judgment actions in similar circumstances. As explained herein, *two* distinct bodies of federal law strongly favor abstention under the circumstances presented here. First, as discussed in Section IV below, application of the *Wilton/Brillhart* abstention doctrine warrants dismissal or a stay of this action. It is within this Court's discretion to decline jurisdiction in a declaratory relief action when parallel proceedings concerning analogous issues may be impaired by simultaneous discovery and adjudications. Allowing AIG to pursue this federal declaratory relief action would require this Court unnecessarily to examine state law insurance issues, invite duplicative discovery and orders—and potentially inconsistent rulings—and allow AIG to force premature adjudication of its coverage obligations to the detriment of the orderly adjudication of underlying lawsuits. The parties to the underlying lawsuits should be permitted to conduct their proceeding without the disruption of contemporaneous insurance litigation on substantially the same issues. Therefore, Mr. Cosby respectfully requests that this Court decline to entertain jurisdiction based on well-settled principles of *Wilton/Brillhart* abstention.

Second, as explained in Section V below, the *Colorado River* doctrine further warrants abstention in this case. An application of the *Colorado River* factors, as endorsed by myriad First Circuit precedent, weighs heavily in favor of declination of federal jurisdiction. Specifically, considerations of avoiding piecemeal litigation, this action's singular focus of state law issues, and AIG's ability to have its grievances heard in state court suggest that abstention is appropriate.

Third, and finally, this Court should decline to entertain AIG's declaratory relief action at this time because of the substantial prejudice that continued prosecution and defense of this action now will place on Mr. Cosby. An insurer may not take legal action for its own benefit if

2

that action could prejudice the insured in its defense of the underlying action. *See, e.g., Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 301-301 (1993). This action is a perfect example of an insurer placing its own interests above those of its insured by initiating litigation that may substantially impair its insured's defenses and ability to defend himself against underlying lawsuits. AIG's claims would force Mr. Cosby to litigate here issues implicated in the underlying lawsuits, thereby prejudicing his defenses and draining important resources. Therefore, AIG's action should be dismissed or stayed pending the resolution of the underlying lawsuits.

## II.   STATEMENT OF FACTS

For many years Mr. Cosby purchased homeowners insurance coverage from AIG to protect himself against, among other things, lawsuits alleging that he defamed others. These policies include the three issued by AIG involved here, as well as other policies issued by AIG and policies issued by other insurers.[2] The Policies obligate AIG to

> pay damages [Mr. Cosby] is legally obligated to pay for personal injury or property damage caused by an occurrence covered by this policy anywhere in the world . . . .

*See, e.g., id.*, Ex. C, Part III, ¶ A.[3] The Policies define "personal injury" to include "bodily injury," "shock, emotional distress, mental injury," "invasion of privacy," and "defamation, libel, or slander." *Id.*, Part I, Definitions. The Massachusetts Policy and California Policy further require AIG to

> pay the costs to defend [Mr. Cosby] against any suit seeking covered damages for personal injury or property damage, even if the suit is false, fraudulent, or groundless.

*Id.*, Part III, ¶ C. Finally, the Policies contain an exclusion stating that the Policies do not apply

---

[2] The policies involved here are policy numbers PCG 0006004261 (the "Massachusetts Policy"), PCG 0006004359 (the "California Policy"), and PCG 0006235889 (the "Excess Policy") (collectively referred to as "the Policies"). *See* Complaint, Ex. A (Docket Entry ("DE") 2), Ex. C (DE 3), Ex. B (DE 4).

[3] The Policy provisions quoted in this motion are the same in the California Policy, Massachusetts Policy, and Excess Policy unless stated otherwise.

3

to:

> personal injury arising out of any actual, alleged, or threatened by any person:
> (a) sexual molestation, misconduct or harassment;
>  . . .
> (c) sexual, physical or mental abuse.

Massachusetts Policy & California Policy, Part III, ¶ E, § 9 & Excess Policy, Part V, ¶B, § 3.

This declaratory relief action is intertwined with and arises out of two currently pending lawsuits against Mr. Cosby, for which Mr. Cosby has sought insurance coverage from AIG. *Green, et al. v. Cosby* was filed on December 10, 2014 in this Court. A second amended complaint was filed April 16, 2015, asserting, on behalf of three plaintiffs, causes of action against Mr. Cosby for defamation. *See* Umanoff Decl., ¶ 3, Ex. A. On May 20, 2015, in Los Angeles Superior Court, case no. BC580909, *Dickinson v. Cosby* was filed. The *Dickinson* complaint alleges causes of action against Mr. Cosby for defamation, false light, and intentional infliction of emotional distress. *Id.*, ¶ 4, Ex. B. This declaratory relief action is also duplicative of AIG's parallel Central District of California action, which was filed simultaneously with this action, and is currently pending before Judge Beverly Reid O'Connell. *See* Amended Complaint, *AIG Prop. Cas. Co. v. Cosby and Dickinson*, Case No. 2:15-cv-04842-BRO-RAO (C.D. Cal.). *See* Umanoff Decl., ¶ 8, Ex. C. The same AIG insurance policies at issue in this case are also at issue in AIG's Central District of California action against Mr. Cosby.

The underlying plaintiffs in the *Dickinson* lawsuit and *Green* lawsuit allege that Mr. Cosby or his agents defamed them in 2005 and 2014 by denying, implicitly or through allegedly authorized statements, previous allegations that the underlying plaintiffs earlier had made that Mr. Cosby: (1) knew the underlying plaintiff(s), (2) drugged the underlying plaintiff(s), and/or (3) had nonconsensual sexual relations with the underlying plaintiff(s). *See, e.g., id.*, ¶ 3, Ex. A, at ¶¶ 25, 30, 33, 52 & 56; *see also id.*, ¶ 4, Ex. B at ¶ 36. According to the underlying plaintiffs,

4

these alleged defamations also caused them to suffer emotional distress thereafter.[4]

Soon after receiving the underlying complaints, Mr. Cosby notified AIG. *Id.*, ¶¶ 5-6. AIG reserved rights to deny coverage, but agreed to defend Mr. Cosby. *Id.*, ¶ 7. The day after AIG reserved rights to deny coverage for the *Dickinson* complaint, AIG filed this declaratory relief action and the parallel Central District of California declaratory relief action.

### III. STANDARD OF DECISION

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Sandler v. Eastern Airlines, Inc.*, 649 F.2d 19, 20 (1st Cir. 1981) ("While a plaintiff need not plead evidence, he must state facts which, if proven, would entitle him to relief."). Dismissal is appropriate when the facts alleged in a declaratory judgment action do not show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 16 (1st Cir. 2014). Because this Court should, in its discretion, decline jurisdiction of this declaratory judgment action, or, in the alternative, stay the proceedings, AIG's declaratory relief action does not raise a justifiable controversy that can be addressed now. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (unless pleadings allege a plausible entitlement to relief, a motion to dismiss should be granted). Further, pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must state a claim upon which relief can be granted. As explained herein, AIG's declaratory relief claim is legally insufficient. Based on principles of federal abstention and an insurer's obligation not to prejudice its insured, this Court cannot currently grant relief due to the pendency of the Underlying Lawsuits. Therefore, at this time there is no controversy existing

---

[4] The alleged "sexual" acts that are the subject of certain of the disputed statements took place, according to the underlying plaintiffs, decades ago, are not actionable, and are not the acts on which the underlying plaintiffs premise their claims of liability against Mr. Cosby. Indeed, some of the defamation claims are premised on acts wholly unrelated to any alleged sexual misconduct, such as allegedly false statements that Mr. Cosby did not know a plaintiff. *See, e.g.*, *id.*, ¶ 3, Ex. A at ¶¶ 25, 33.

between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Indem. Ins. Co. v. Kellas*, 173 F.2d 120, 123-24 (1st Cir. 1949) (noting that declaratory judgments are not proper in a case concerning a "difference or dispute of a hypothetical or abstract character" and finding that because underlying state court action had not established certain facts, declaratory judgment action by insurer did not yet present a genuine controversy of sufficient immediacy).

Under the Declaratory Judgment Act, federal courts have discretion in deciding whether to hear a declaratory judgment action. *See* 28 U.S.C. § 2201 ("[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (under the *Brillhart* doctrine, "district courts have substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings (and need not point to 'exceptional circumstances' to justify their actions")); *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 308 n.3 (1st Cir. 1986) (when a federal action is for declaratory relief, the "federal court's duty to exercise its jurisdiction is relaxed"). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287. Additionally, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in "exceptional circumstances" such as those present here, a federal court may decline to adjudicate a lawsuit in deference to a pending parallel proceeding. Furthermore, an insurer may not take legal actions for its own benefit if those actions could prejudice the insured in its defense of an underlying action. *See Montrose*, 6 Cal. 4th at 301-02.

IV. **ARGUMENT**

    A. **THIS DECLARATORY RELIEF ACTION SHOULD BE DISMISSED PURSUANT TO *WILTON/BRILLHART* ABSTENTION PRINCIPLES**

The Supreme Court and the First Circuit have made clear that a district court's decision to exercise jurisdiction over a declaratory judgment action is fully discretionary because

Congress, in creating the Declaratory Relief Act, specifically gave the courts such latitude. *See Wilton*, 515 U.S. at 282, 286-87; *DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). As a result, pursuant to *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), courts have broad discretion to dismiss or stay a declaratory relief action. The Supreme Court has confirmed that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court" practical considerations demand that the federal court abstain from exercising its discretion to hear a declaratory judgment action. *Wilton*, 515 U.S. at 283. The *Wilton/Brillhart* abstention test, as applied in the First Circuit, involves a totality of the circumstances analysis. *See Atlas Copco Constr. Tools, Inc. v. Allied Constr. Prods, LLC*, 307 F. Supp. 2d 228, 233-34 (D. Mass. 2003). Factors that Courts in the First District typically consider under *Wilton/Brillhart* abstention include: (1) whether state law is at issue; (2) the risks of inconsistent judgments and undue entanglement; (3) whether parallel actions are implicated; (4) the relative status of each case; and (5) whether forum shopping is evident. *See, e.g., Am. Home Assur. Co. v. Insular Underwriters Corp.*, 494 F.2d 317, 320 (1st Cir. 1974); *Petricca v. FDIC*, 349 F. Supp. 2d 64, 67 (D. Mass. 2004); *U.S. Liab. Ins. Co. v. Wise*, 887 F. Supp. 348, 350-52 (D. Mass. 1995). An application of the *Wilton/Brillhart* factors here strongly encourages abstention.

      **1.**      **STATE LAW ISSUES PREDOMINATE THIS DECLARATORY RELIEF ACTION**

Federal declaratory relief actions focusing solely on state law insurance issues entangled with underlying actions typically trigger abstention in light of the minimal federal interests implicated. *See*, *e.g.*, *U.S. Liab.*, 887 F. Supp. at 350-51 (a state's interest in clarifying the parameters of its own insurance law can be a significant factor in the abstention analysis); *Travelers Cas. & Sur. Co. v. Boston Gas Co.*, 76 F. Supp. 2d 59, 67 (D. Mass. 1999) ("When faced with the wide reach and importance of decisions regarding Massachusetts insurance law

and utility regulation that are at issue in this case, a court must be especially sensitive to concerns of comity that weigh heavily in favor of a state court disposition."). Further, "[t]he absence of any issue of federal law weighs in favor of staying this action . . . ." *Nat'l Union Fire Ins. Co. v. Maritime Terminal, Inc.*, 2015 WL 3952766 at *6 (D. Mass. June 29, 2015).

It is undisputed that the insurance issues that AIG raises are governed by state law and present no federal question. To evaluate AIG's claims for declaratory relief, this Court will have to immerse itself in Massachusetts and California insurance law and in the allegations in the Underlying Lawsuits. For example, this Court will need to construe the Policies' sexual misconduct exclusions in order to rule on AIG's erroneous argument that the exclusion bars coverage for every allegation and every claim in the *Green* lawsuit (a) when some of the alleged defamatory statements do not involve any alleged sexual misconduct, (b) when those complaints are premised on and seek recovery solely for the alleged defamatory statements themselves, not any alleged sexual misconduct, and (c) when the statements were made decades after the alleged sexual misconduct. In doing so, this Court will need to analyze not only the Policy language at issue, but also state insurance law, conflict of law issues, the public policies of California and Massachusetts, law precluding an insurer from forcing its insured to litigate on multiple fronts, and the (in)appropriateness under state law of AIG filing two concurrent lawsuits against its insureds. Having this Court engage in these tasks is an unnecessary and potentially vexatious exercise of federal court jurisdiction. It is preferable to allow state courts to determine substantive state insurance law issues, and the other state law issues involved, while allowing the courts in the Underlying Lawsuits (including this Court) to address the factual and legal issues involved in those actions. There is no reason why AIG cannot, at the appropriate time after resolution of the Underlying Lawsuits, bring this coverage dispute in a state court forum. Therefore, because this case exclusively concerns state law insurance issues predicated on unsettled allegations in the ongoing Underlying Lawsuits, *Wilton/Brillhart* strongly favors abstention.

### 2. THE IMPORTANT GOAL OF AVOIDING DUPLICATIVE LITIGATION SUPPORTS ABSTENTION

"[C]autions from the Court of Appeals for the First Circuit regarding the wastefulness and potential harm of conflicting judicial decisions that result from piecemeal and duplicitous litigation further support a decision to stay this action." *Travelers*, 76 F. Supp. at 67-68. Allowing this declaratory relief action to proceed will create duplicative litigation because this action will require many of the same findings of fact and law as the Underlying Lawsuits. *Wilton/Brillhart* counsels this Court to avoid uneconomical and vexatious interference with the ongoing underlying proceedings, and avoid unnecessary expenditure of judicial time and resources. *Brillhart*, 316 U.S. at 495; *see also Aetna Cas. & Sur. Co. v. Kelly*, 889 F. Supp. 535, 541 (D.R.I. 1995) (granting partial stay based on principles of abstention when determination of coverage was dependent on questions that were central to the underlying state tort litigation, and answering such questions would result in duplicative and possibly divergent findings of fact and law); *see also Nat'l Union*, 2015 WL 3952766 at *4 ("Where adjudication of a declaratory judgment action requires resolution of factual questions that will be litigated in the underlying state court proceeding, practicality and wise judicial administration would counsel against proceeding with the declaratory judgment action.") (citations omitted).

A dismissal, or alternatively, a stay of this action will avoid the risk of inconsistent factual findings and judgments, which is a serious risk given the substantial overlap between this action and the Underlying Lawsuits, and will avoid having multiple jurisdictions—including the California state and Federal Courts—entertain duplicative and wasteful discovery and motion practice on the same issues. For example, this action, if allowed to proceed, would likely see discovery duplicative of that in the Underlying Lawsuits, on topics such as:

- The facts and circumstances concerning the disparaging statements allegedly made by Mr. Cosby;
- The nature of Mr. Cosby's relationships with various individuals who, according to the underlying plaintiffs, allegedly made disparaging statements about the underlying

- plaintiffs on Mr. Cosby's behalf;
- Whether Mr. Cosby allegedly implicitly disparaged any of the underlying plaintiffs; and
- Mr. Cosby's defenses to the alleged defamations.

Further, this action would likely require duplicative findings to those in the Underlying Lawsuits on issues such as whether the alleged defamatory statements are all "arising out of" alleged sexual encounters. Therefore, proceeding with AIG's declaratory relief action—particularly with Ms. Green, Ms. Serignese, and Ms. Traitz as parties—could require this Court to address the same—and additional—discovery issues and disputes as may arise in the *Green* lawsuit, while also considering the impact on the *Dickinson* lawsuit and AIG's California lawsuit. This could lead to conflict between the state and federal fora, inconsistent rulings, and a waste of time and resources. Abstention will appropriately eliminate the risk of conflicting findings or conflicting discovery obligations. *See Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985) (affirming district court's decision to stay federal declaratory relief action pending outcome of a related action in California state court, and finding that "[i]f the federal and state actions were to proceed concurrently, there is a real possibility that the two courts might interpret the same standard policy language differently, with the result that [the insured] would find itself without sufficient liability insurance coverage from the insurers after years of paying premiums.").

### 3. THIS DECLARATORY RELIEF ACTION IS PARALLEL TO THE UNDERLYING LAWSUITS

"[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties" and "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495. This declaratory relief action is parallel to the *Dickinson* lawsuit, the *Green* lawsuit, and AIG's California coverage lawsuit because substantially the same parties are involved, the same common nexus of facts are at issue, and many of the same findings of fact

and law will be required. Of course, it matters not that there is not complete identity of parties between the Underlying Lawsuits and this federal declaratory relief action. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 533 (1st Cir. 1991) (finding parallel proceedings despite lack of perfect identify of parties and issues); *Nat'l Union*, 2015 WL 3952766 at *4 ("[A]n identity of parties is not required for proceedings to be considered parallel. There need only be an available procedural vehicle in state court by which the federal plaintiff, even if not a party to the state action, can resolve the issues raised in the federal action.").

First Circuit authorities have found parallel proceedings despite an insurer *not* being a party to an underlying lawsuit, concluding that the insurer remains an interested party as a result of the insurance policy. *See*, *e.g.*, *Aetna*, 889 F. Supp. at 540 ("as the tort defendants' insurer, [insurance company] is an indirect participant in the underlying litigation and has the option of raising coverage questions in state court."). The same is true here, where AIG is an interested party to the Underlying Lawsuits, has added Ms. Green, Ms. Serignese and Ms. Traitz as defendants here, and indeed has agreed to defend Mr. Cosby in those lawsuits, subject to a reservation of rights.

Furthermore, even when there is no pending parallel state court action, district courts maintain discretion to decline declaratory relief actions. *See, e.g. Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754 (9th Cir. 1996) ("nothing in the Declaratory Judgment Act requires a parallel state proceeding in order for the district court to exercise its discretion to decline to entertain the action"); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) ("[T]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief."); *Allstate Ins. Co. v. Kaneshiro*, 1998 WL 382705 at *2 (9th Cir. June 8, 1998) ("absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice"). Thus, even if this Court were to find that the Underlying Lawsuits are not parallel actions, it has discretion to decline to hear this declaratory relief action.

11

### 4. THE UNDERLYING LAWSUITS ARE FURTHER ADVANCED

The *Green* Lawsuit has been pending in Massachusetts district court since December 2014, and this Court has been actively involved in the merits and management of that action. The *Dickinson* lawsuit also was filed before AIG's declaratory relief actions. Because Mr. Cosby has immediately filed this motion to dismiss, or alternatively to stay, this declaratory relief action, no progress has been made in this action and thus no efforts or resources will be wasted by its dismissal.

### 5. FORUM SHOPPING

This factor does not appear to be implicated.

### B. DISMISSAL IS ALSO WARRANTED UNDER *COLORADO RIVER*

The Supreme Court recognized in *Colorado River*, 424 U.S. at 818-819, and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23-26 (1983), that abstention is appropriate when it will facilitate wise judicial administration, conserve scarce judicial resources, and facilitate comprehensive disposition of litigation. The *Colorado River* doctrine applies in circumstances of parallel proceedings, meaning substantially similar lawsuits litigating similar issues. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) ("Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel.") (citation omitted). Further, *Colorado River* recognizes that abstention may be appropriate if proceeding with the federal suit would be inconsistent with "[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817 (citation omitted).

Courts have considered numerous factors in determining whether to dismiss or stay a federal action consistent with *Colorado River*: (1) avoiding the exercise of jurisdiction over particular property by more than one court; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the applicability of federal or state law to the merits of the claims at

issue; (6) the adequacy of the state forum, and (7) the vexatious or reactive nature of the federal lawsuit. *See Moses H. Cone*, 460 U.S. at 15-16, 23; *Colorado River*, 424 U.S. at 818-19; *Gr. Am. Ins. Co. v. Precision Prods. Corp.*, 1992 WL 188886 at *1 (1st Cir. Aug. 7, 1992). Many of these factors are similar to those considered under the *Wilton/Brillhart* abstention doctrine, but unlike the lower discretionary threshold employed there, *Colorado River* abstention ordinarily seeks "exceptional circumstances." The first *Colorado River* factors are relatively neutral in the present case. There is no property in dispute, and this forum is not less convenient than a Massachusetts state court. However, AIG's decision to litigate in two different Federal courts does render the forum inconvenient for that reason.

The third factor, the desirability of avoiding piecemeal litigation, weighs in favor of dismissal. AIG's initiation of *two* coverage lawsuits requires Mr. Cosby to simultaneously litigate against *four* related lawsuits, which is inherently inconvenient and prejudicial. Allowing the coverage issues to be heard in a single forum will provide the most streamlined mechanism for addressing the entangled issues in the Underlying Lawsuits and this coverage litigation. And, AIG's decision to address the *Green* lawsuit here and the *Dickinson* lawsuit in California by definition creates piecemeal litigation.

The fourth factor, the order in which jurisdiction was obtained, may also weigh towards dismissal. The Underlying Lawsuits were filed before this action. The Underlying Lawsuits are not in materially different postures, and AIG filed its two federal actions on the same day, even though state fora were available and even though Mr. Cosby should be viewed as the true plaintiff.

The fifth factor, the applicability of state law, clearly warrants dismissal. As discussed above in section IV 1., the substance of this declaratory relief action is based on state law. This action is based on diversity, not on federal question jurisdiction. Indeed, Congress has expressly left issues related to insurance law to the states in the McCarran-Ferguson Act. *See* 15 U.S.C. §§ 1011-1012 (1988). No substantive federal law is implicated.

The sixth factor, the adequacy of the state forum, also warrants dismissal. California and

13

Massachusetts state courts both are available and adequate.

Finally, the seventh factor, the vexatious or reactive nature of this lawsuit, warrants dismissal. AIG has filed *two* largely duplicative actions, simultaneously, and in different federal district courts. And it has done so to avoid providing the defenses that it promised Mr. Cosby if he were sued for defamation. The duplicative nature of the actions, coupled with the fact that they are in reaction to Mr. Cosby's requests for payment and for performance under the insurance policies, shows a classic "reactive" or "defensive" use of federal litigation that warrants dismissal under *Colorado River*. *See Moses H. Cone*, 460 U.S. at 17 n.20. Thus, *Colorado River* likewise favors this Court declining jurisdiction by dismissing, or alternatively staying, this action.

## C. AIG'S CLAIMS FOR DECLARATORY RELIEF WARRANT A STAY PURSUANT TO *MONTROSE* TO PROTECT MR. COSBY FROM THE POTENTIAL FOR PREJUDICE

An insurer may not take legal actions for its own benefit that could prejudice the insured in its defense of an underlying action. *See Montrose*, 6 Cal. 4th at 301-02. Indeed, an insurer may only pursue legal action when the coverage action will do *no* injury to the defense of the underlying action. *Id.* Even in a coverage lawsuit, the insurer must adhere to its covenant of good faith and fair dealing and "give at least as much consideration" to the interests of its insured as it does its own. *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19 (1979), *cert. denied and appeal dismissed*, 445 U.S. 912 (1980).

Numerous jurisdictions, including Massachusetts, have applied the so-called *Montrose* doctrine in staying insurance coverage lawsuits pending resolution of underlying litigation when the insured could be prejudiced by adjudication of the coverage lawsuit. *See, e.g., Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 1996 WL 1186779 at *3 (Middlesex Super. Ct. Jan. 29, 1996) (granting a protective order and staying discovery in insurance case related to an ongoing underlying lawsuit in light of potential prejudice to insured); *Liberty Mut.*, 751 F.2d at 477 (affirming district court's stay of federal declaratory relief action when there was substantial

risk of prejudice to the insured); *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 562 (Colo. 1996) (court should refuse to hear declaratory relief action because of potential prejudice to parties in underlying action unless declaratory relief issues are independent of and separable from those in underlying action).

When, as here, there is clear overlap between the issues in the federal declaratory judgment action and the Underlying Lawsuits, a stay of the coverage action is warranted. *Montrose*, 6 Cal. 4th at 301 ("To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action"). The reasons are three-fold. "*First*, the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit." *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979 (1995). "[S]econd, such a circumstance requires the insured to fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions—this effectively undercuts one of the primary reasons for purchasing liability insurance." *Id.* "[T]hird, there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former." *Id.* A stay is required with the first and third type of prejudice, which require factual overlap. *Montrose Chem. Corp. v. Superior Court*, 25 Cal. App. 4th 902, 909-910 (1994). Application of each of these factors to the present action indicates that a dismissal, or alternatively, a stay, of this declaratory relief action is necessary.

The prejudice inflicted on an insured by facing concurrent lawsuits against an underlying plaintiff and his insurer is apparent here. AIG's declaratory relief action would provide the exact "aid and comfort" mentioned in *Haskel* to the underlying plaintiffs. When AIG seeks baseless and inappropriate discovery in this lawsuit regarding the alleged defamations, Mr. Cosby's relationships with the underlying plaintiffs, and Mr. Cosby's sexual history, it could be aiding

15

the underlying plaintiffs. For example, it is clear from AIG's complaint in this action that AIG will attempt to prove the applicability of the Policies' exclusion for sexual misconduct, and thus will seek discovery regarding the linkage between the alleged defamatory statements and the alleged sexual misconduct. The underlying plaintiffs also likely will focus on the alleged defamatory statements and the alleged sexual misconduct. Thus, AIG's acts here may provide the prohibited "aid and comfort" to the underlying plaintiffs.

Further, not only does AIG's action bolster the underlying plaintiffs, who will perceive Mr. Cosby as under attack even from his supposed backers, but it splits Mr. Cosby's focus and drains his resources. As in *Haskel*, such a pernicious result "effectively undercuts one of the primary reasons for purchasing liability insurance." 33 Cal. App. 4th at 979; *see also Aetna*, 889 F. Supp. at 541-42 ("The principle purpose of liability insurance is to protect policy holders from claims asserted by third parties based on matters covered by the policy. By taking action that makes a policy holder liable for such claims, an insurer would subvert the purpose of the policy and violate one of the most fundamental duties it owes to its insured."). Allowing the coverage lawsuits to continue would force Mr. Cosby to fight a multi-front war against both the underlying plaintiffs, in two lawsuits, and against AIG in two lawsuits, thereby draining resources, money and time that could be channeled into the defense against the Underlying Lawsuits. Forcing Mr. Cosby to fight a ***four-front*** battle would demonstrate AIG's complete disregard for the best interests of Mr. Cosby and would indisputably manifest itself in AIG directly impairing Mr. Cosby's ability to defend himself in the Underlying Lawsuits. *See, e.g., Haskel*, 33 Cal. App. 4th at 979 (recognizing that forcing an insured to "fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions . . . effectively undercuts one of the primary reasons for purchasing liability insurance").

Finally, issues regarding Mr. Cosby's alleged conduct—including whether he even knew the underlying plaintiffs—and issues regarding whether allegedly defamatory statements were authorized by Mr. Cosby should be resolved in the Underlying Lawsuits, rather than in this

coverage action. *See Montrose*, 25 Cal. App. 4th at 910 ("If the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage"); s*ee also Aetna*, 889 F. Supp. at 541 (noting that determinations in insurance coverage action are "likely to be binding on the [insured] defendants in the underlying litigation under the doctrines of *res judicata* and/or collateral estoppel"). Numerous subsequent decisions have embraced the *Montrose* rationale. *See, e.g., Haskel*, 33 Cal. App. 4th at 979 ("It is *only* where there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist").

By this action, AIG is seeking a determination that its exclusion specific to sexual misconduct should be broadly distorted to apply to claims of defamation premised on statements allegedly made decades after any "sexual misconduct," and even where some of the claims are wholly divorced from any acts of "sexual misconduct." AIG undoubtedly will ask the Court to consider the relationship between any "sexual misconduct" 30 or 40 years ago and statements made in the last year—much as the plaintiffs will in the Underlying Lawsuits. The parties here, including Ms. Green, Ms. Serignese and Ms. Traitz, will be called upon to litigate that issue, while the very same issues are being litigated in the Underlying Lawsuits. In essence, AIG, Mr. Cosby's purported ally, will in fact become his enemy aligned with his adversaries.[5] This is, of course, the very evil that the *Montrose* court cautioned against in declaring that an insurer cannot pursue discovery or litigation against its insured that jeopardizes its insured's defense of underlying claims. *See, e.g., Montrose*, 6 Cal. 4th at 302 (potential that "insurer's proof will prejudice its insured in the underlying litigation is . . . the classic situation in which the declaratory relief action should be stayed"); *United Enters., Inc. v. Superior Court*, 183 Cal. App. 4th 1004, 1012 (2010) (insured entitled to stay of a declaratory relief action when insurer is

---

[5] This is reminiscent of what Shakespeare attributed to Caesar: "Et tu, Brute?"

17

"putting the insured in a position where [the insured] will have to try to prove some of the things [the insured is] actually trying to defend themselves from."); *Aetna*, 889 F. Supp. at 541 (allowing insurance litigation would "convert [insurer] and [insured] from allies to adversaries" and harm insured in the underlying litigation). Thus, to avoid the potential that this insurance action will prejudice Mr. Cosby in the Underlying Lawsuits, this action should be dismissed or stayed.

## V. CONCLUSION

This Court should abstain from exercising jurisdiction here and therefore dismiss this declaratory judgment action. It clearly has the discretion to do so, and should avoid entanglement in state law issues and other legal proceedings. Alternatively, if this Court does not abstain, it should stay this action pending resolution of the *Green* lawsuit and AIG's California action.

Dated: September 14, 2015

The Defendant
WILLIAM H. COSBY, JR.
By His Attorneys:

/s/ Kimberly A. Umanoff
Kirk A. Pasich, *pro hac vice*
Kimberly A. Umanoff, *pro hac vice*
Liner LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518
(310) 500-3350
kpasich@linerlaw.com
kumanoff@linerlaw.com


/s/ Francis D. Dibble, Jr.
Francis D. Dibble, Jr., BBO No. 123220
Jeffrey E. Poindexter, BBO No. 631922
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115-5507
(413) 272-6246
fdibble@bulkley.com
jpoindexter@bulkley.com

**CERTIFICATE OF SERVICE**

      I, Kimberly A. Umanoff hereby certify that on September 14, 2015, I electronically filed the above-referenced document with the Clerk of the United States District Court for the District of Massachusetts by using the ECF system. I certify that all participants in the case are registered ECF users and that service will be accomplished by the ECF system.

                */s/ Kimberly A. Umanoff*

                Kimberly A. Umanoff

47612.001-2548659