# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

| | |
|---|---|
| **AIG PROPERTY CASUALTY COMPANY** | **Civil Action No. 3:15-CV-30111-MGM** |
| *Plaintiff,* | **WILLIAM H. COSBY'S OPPOSITION TO AIG PROPERTY CASUALTY COMPANY'S MOTION TO STAY LITIGATION PENDING OUTCOME OF DECLARATORY JUDGMENT ACTION** |
| v. | |
| **TAMARA GREEN, THERESE SERIGNESE, LINDA TRAITZ, and WILLIAM H. COSBY, JR.** | **REQUEST FOR ORAL ARGUMENT** |
| *Defendants.* | |

1

# I. INTRODUCTION

AIG's argument for a stay of the underlying *Green* lawsuit is premised on fundamental misstatements regarding the nature of the *Green* lawsuit and a misconstruction of its own Policies' terms. AIG continues to incorrectly argue that the claims asserted in the *Green* lawsuit "arise out of" alleged sexual assaults or actual sexual assault[1] and that the *Green* plaintiffs sat on their claims against Mr. Cosby for decades. In so misconstruing the *Green* lawsuit, AIG ignores the reality that the *Green* lawsuit does not assert any claim for or seek any relief for actual or alleged sexual misconduct. Instead, the *Green* complaint asserts claims based on acts unrelated to any alleged sexual misconduct, namely ***statements*** that Mr. Cosby or his agents allegedly made in response to statements by the *Green* plaintiffs that the *Green* plaintiffs allege damaged their reputations, such as ***statements*** denying knowing or interacting with certain plaintiffs in the *Green* lawsuit. These statements, which were allegedly made in 2014, and from which the claims in the *Green* lawsuit arise out of, are not themselves excluded sexual misconduct or allegations of sexual misconduct—they are merely statements of denial. Indeed, no claim is made for sexual misconduct, nor can an actionable claim for sexual misconduct be made. No one can dispute that Mr. Cosby or his agents' alleged statements—the sole bases of his alleged liability—are not themselves "actual, alleged, or threatened" sexual molestations or abuse. Thus, the *Green* complaint is based on torts allegedly first committed in 2014, not acts allegedly occurring more than 40 years earlier, and is based on offenses expressly covered by the AIG Policies, such as defamation, libel, emotional distress and mental injury, not torts arising out of any alleged sexual molestation or sexual abuse.

---

[1] *See* Memorandum of Law in Support of Plaintiff AIG Property Casualty Company's Motion to Stay Litigation Pending Outcome of Declaratory Judgment Action, (AIG Memo.) (Docket Entry ("D.E.") 27) at 2 & 6.

Notwithstanding AIG's misconstruction of the claims in the *Green* Complaint and of its own Policies, AIG's motion ignores the fact that Mr. Cosby has ***already*** filed a motion to dismiss this lawsuit on abstention principles, or, alternatively, stay this coverage lawsuit pending the outcome of the *Green* action. This Court will hear oral argument on Mr. Cosby's Motion to Dismiss, or alternatively to Stay, this action on December 3, 2015. Thus, AIG's after-filed motion in essence asks this Court to deny Mr. Cosby's motion (already fully briefed) and do the exact opposite of what Mr. Cosby has requested. At the very least, AIG's motion should not be considered until after Mr. Cosby's motion to dismiss, or alternatively, to stay, is decided. And, as stated in Mr. Cosby's motion, this Court should stay this coverage action, not the underlying lawsuit, because allowing this coverage action to proceed contemporaneously—or even worse— first, would  substantially prejudice Mr. Cosby. Finally, AIG's Motion to Stay fails to set forth any compelling reason or any controlling authority for the Court to stay the underlying *Green* lawsuit to allow AIG to litigate its duty to defend immediately, while delaying the *Green* plaintiffs and Mr. Cosby's day in court for an undeterminable amount of time. AIG's Motion to Stay should be denied.

## II.    ARGUMENT

A declaratory relief action is a privilege, not a right,[2] and AIG has no right to force its insured and the underlying *Green* plaintiffs to wait to have their day in court so that AIG may

---

[2] Under the Declaratory Judgment Act, federal courts have discretion in deciding whether to even hear a declaratory judgment action. *See* 28 U.S.C. § 2201 ("[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (under the *Brillhart* doctrine, "district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in

attempt to extinguish the coverage that it is contractually obligated to provide Mr. Cosby.  A coverage action that involves factual issues similar to the underlying action should be stayed pending the outcome of the underlying lawsuit.  As reported in a leading treatise on insurance coverage law, "[t]he majority of the most recent cases, however, have held that a declaratory judgment should not be entered if it depends on the resolution of factual disputes that are at issue in the underlying action."  Allan D. Windt,  2 *Insurance Claims and Disputes*, § 8.4 (6th ed. 2015).  As summarized therein, the majority of courts, which have not allowed declaratory judgment actions by an insurer to usurp the determination of factual issues in underlying cases, have offered six justifications for this rule:

> 1.  The declaratory judgment action was not intended to force the insured to have a 'dress rehearsal' of an issue to be tried in the main case
>
> 2.  The holding in the declaratory relief action might inappropriately collaterally estop the parties to the main action as to certain factual issues
>
> 3.  Such a proceeding would unduly burden the insured and improperly allow the insurer to wrest control of the litigation from the injured party
>
> 4.  Such a declaratory judgment would violate the principle of judicial economy
>
> 5.  Such an action would constitute an unwarranted interference with another court's proceedings
>
> 6.  To the extent the declaratory judgment might resolve an issue adversely to the insured, it would be inherently unfair to force the insured to litigate

---

light of pending state proceedings (and need not point to 'exceptional circumstances' to justify their actions")); *Fuller Co.v. Ramon I. Gil, Inc.*, 782 F.2d 306, 308 n.3 (1st Cir. 1986) (when a federal action is for declaratory relief, the "federal court's duty to exercise its jurisdiction is relaxed").

against the insurance company; under those circumstances, rather than

obtaining the benefit of the company's resources and expertise in defending

against the plaintiff, those resources, for which the insured had bargained,

would be turned against the insured and used to help establish his or her

liability.

*Id.* The only purpose served by an insurer's adjudication of its coverage obligation *while* the

underlying action is pending is to save the insurance company money and enable it to avoid

liability for wrongfully denying coverage. *Id.* "Neither end warrants requiring the insured to

litigate the issues regarding liability both in the main case and in a declaratory judgment action."

*Id.* And, refusing an insurer the right to declaratory relief before the underlying lawsuit is

resolved when doing so would prejudice an insured is not inequitable. *Id.* "Such refusal will

merely require the insurer to comply with its contractual obligations until the lawsuit against its

insured is terminated." *Id.* Thus, as Mr. Cosby has already argued in his September 14, 2015,

Motion (D.E. 17 & 18), this coverage action, and not the underlying *Green* lawsuit, should be

stayed (or dismissed).

## A.   The Authority AIG Relies Upon to Support its Argument for a Stay of the Underlying Lawsuit is Unavailing

The only authority cited by AIG for its assertion that Massachusetts law "encourages" the

stay of underlying proceedings while questions regarding the duty to defend are resolved in the

coverage litigation is a quotation from *Metropolitan Property & Casualty Insurance Co. v.*

*Morrison*, 460 Mass. 352, 951 N.E.2d 662 (2011). However, the language quoted by AIG is

mere *dicta* and in fact is unsupported by the authority cited by the *Metropolitan* court for the

statement.

In *Metropolitan*, the insured was sued in a personal injury action and gave notice to his insurer of the claim. The insurer did not retain an attorney to defend the insured. Instead, it filed a declaratory judgment action seeking a declaration by the court that it had no duty to indemnify the insured for the damages claimed in the personal injury action and sent a letter to the insured disclaiming any obligation to provide indemnity or a defense. The insured did not file an answer or other response to the personal injury action and a default judgment was entered against him. The trial court granted summary judgment for the insurer in the coverage action, finding that it did not have a duty to defend the insured in the underlying action.

The Supreme Judicial Court of Massachusetts reversed. It stated that an insurer has a duty to defend until the insurer establishes that no potential for coverage exists, and that the insurer had not done so. *Id.* at 359. Instead, the insurer had disclaimed a duty to defend without obtaining a judicial declaration that there was no such duty and had failed to file an answer or responsive pleading in the personal injury action. Therefore, it had breached its duty to defend.

In making the point that an insurer has a duty to defend until the insurer has established that there is no potential for coverage, the court does state, as AIG repeatedly points out:

> Where there is uncertainty as to whether an insurer owes a duty to defend, the insurer has the option of providing the insured with a defense under a reservation of rights, filing a declaratory judgment action to resolve whether it owes a duty to defend or to indemnify, moving to stay the underlying action until a declaratory judgment enters, and withdrawing from the defense if it obtains a declaration that it owes no duty to the insured.

*Id.* at 358-59. However, because in *Metropolitan* the underlying case was already completed, and there was no request for a stay of the underlying action pending a resolution of the duty to defend issue, the court's statement about what actions the insurer could have taken to preserve its

rights are mere *dicta*. Further, the case cited by the *Metropolitan* court for this statement,

*Sarnafil, Inc. v. Peerless Insurance Co.,* 418 Mass. 295, 636 N.E.2d 247 (1994), makes no

mention of a stay of the underlying action. *Sarnafil* states:

> [I]t must be emphasized that the reservation of rights would not
> have excused [the insurer's] duty to protect [the insured] while [the
> insurer] investigated to determine whether coverage existed. This
> duty is made clear by our cases. . . .'The company could, pending
> ascertainment of the essential facts pertinent to its liability under
> the policy, take the usual measures in defense of the actions
> without barring itself from subsequently withdrawing when it
> discovered that the contract of insurance did not cover the
> [insured's claim].'

*Id.* at 304.

AIG has cited no case in which a court has stayed the underlying action pending

resolution of the duty to defend issue, and in fact cites no case in which the court even addressed

a motion for such a stay. Indeed, the language from *Metropolitan* upon which AIG relies so

heavily and refers to as an "established principle" of Massachusetts law has not been cited or

referred to in any other case. Therefore, AIG's claims that Massachusetts law "encourages the

stay of underlying proceedings in favor of resolving questions concerning the duty to defend,"

AIG Memo. at 3, and that Massachusetts "has recognized the rights of an insurer to obtain an

adjudication of coverage without being saddled with the financial burden of funding a defense in

a situation where coverage does not apply," *id.* at 5, are unsupported by any authority and must

be disregarded.

**B.      AIG's Requested Stay of the Underlying Lawsuit is Not Reasonable, And Will
         Unduly Delay the Green Lawsuit**

The reasons set forth by AIG for its requested stay are without merit. First, AIG claims

that the "reasoning and rationale" of *Metropolitan* "demonstrates the stay requested is

reasonable." AIG Memo. at 6. However, as is demonstrated above, *Metropolitan* demonstrates no such thing.

Second, AIG claims that the stay it seeks would not unduly delay the *Green* lawsuit. It asserts that the duty to defend issue can be resolved quickly because it is purely a question of law that can be resolved by comparing the terms of the insurance policies and the allegations of the *Green* complaint. Therefore no discovery will be needed in the coverage action and the duty to defend issue can be resolved quickly, presumably via summary judgment. However, if that is the case, then there is no reason AIG should not continue to defend Mr. Cosby in the *Green* action for the brief period of time AIG claims it will take to resolve the duty to defend issue. Although AIG claims, without evidentiary support, that the cost of defending Mr. Cosby is "considerable," requiring AIG to provide the defense it agreed to provide Mr. Cosby for just a short time more is not unfair or unjust. Indeed, denying a stay here would likely promote judicial efficiency because AIG will have an incentive to take steps to resolve the duty to defend issue sooner rather than later. In any event, Mr. Cosby cannot agree at this time that no discovery is necessary. This action is not even at issue yet, and no disclosures have yet occurred. Therefore, it is not possible to assess whether and what discovery is necessary and it is possible that Mr. Cosby may need discovery to respond to arguments that AIG may make.

Third, AIG claims that a stay of the *Green* lawsuit pending a decision on the duty to defend will not prejudice the *Green* plaintiffs. AIG claims that the *Green* plaintiffs cannot reasonably protest or object to a stay because of the "temporal relationship between [the alleged wrongful acts in the 1960s and 1970s] and the claims in the *Green* case." AIG Memo. at 6. In other words, AIG claims that the *Green* plaintiffs waited decades to bring claims against Mr. Cosby, and therefore cannot complain about a delay of a few months. However, AIG gets it

completely wrong. The *Green* plaintiffs are not seeking recovery from Mr. Cosby for events in the 1960s and 1970s. They are seeking recovery, and claim injury, based on statements first allegedly made by alleged agents of Mr. Cosby in 2014. Therefore, AIG's notion that the *Green* plaintiffs delayed 40 or 50 years simply is untrue.

In any event, Mr. Cosby is entitled to proceed with his defense against the allegations made in the *Green* lawsuit. As his insurer, AIG has an obligation to help him do so. AIG seeks to turn this principle on its head, attempting to delay Mr. Cosby's defense while it pursues its own attack on Mr. Cosby. Not surprisingly, AIG cites no law permitting an insurer to do so. Therefore, AIG's request for a stay of the underlying lawsuit should be denied.

**C.      Massachusetts Law Supports a Stay of the Coverage Action, Rather than the Underlying Action**

Pursuant to the doctrine espoused in *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287 (1993), and followed by a plethora of jurisdictions, including Massachusetts, AIG's coverage action—not the underlying litigation—should be stayed.[3] An insurer may not take legal actions for its own benefit that could prejudice the insured in its defense of an underlying action. *See Montrose*, 6 Cal. 4th at 301-02. Indeed, an insurer may only pursue legal action when the coverage action will do ***no*** injury to the defense of the underlying action. *Id.* The insurer's duty of good faith and fair dealing requires it to give at least as much consideration to the insured's interests as its own, even where coverage is in dispute. *See Peckham v. Continental*

---

[3] Massachusetts' leading source of continuing education cites *Montrose* with approval, calling it one of the most comprehensive treatments of whether a declaratory judgment suit over insurance coverage may precede determination of the underlying matter. Kim V. Marrkand, *Massachusetts Liability Insurance*, LIM MA-CLE 11-1 (2014). As stated above, the argument that the coverage action should be stayed has already been briefed in Mr. Cosby's September 14, 2015, Motion to Dismiss (D.E. 17 & 18).

*Cas. Ins. Co.*, 997 F. Supp. 73, 80 (D. Mass. 1989); *see also Aetna Cas. & Sur. Co. v. Kelly*, 889 F. Supp. 535, 541 (D.R.I. 1995) (litigating issues implicated in underlying action in the coverage action would "be inconsistent with Aetna's obligations as an insurer. The principal purpose of liability insurance is to protect policy holders from claims asserted by third parties based on matters covered by the policy. By taking action that makes a policy holder liable for such claims, an insurer would subvert the purpose of the policy and violate one of the most fundamental duties it owes to its insured.").

As noted above, Massachusetts is among the many jurisdictions that have applied the so-called *Montrose* doctrine in staying insurance coverage lawsuits pending resolution of underlying litigation when the insured could be prejudiced by adjudication of the coverage lawsuit. *See, e.g., Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, No. 918667, 1996 WL 1186779 at *3 (Middlesex Super. Ct. Jan. 29, 1996) (granting a protective order and staying discovery in insurance case related to an ongoing underlying lawsuit in light of potential prejudice to insured); *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985) (affirming district court's stay of federal declaratory relief action when there was substantial risk of prejudice to the insured); *S. Union Co. v. Liberty Mut. Ins. Co.*, No. 06-CV-12067-RCL, 2007 WL 1657427, *2-3 (June 5, 2007 D. Mass.) (allowing insured to amend complaint to remove indemnity claim and refusing to allow insurer to assert declaratory relief claim on indemnity issue when staying indemnity issue would avoid prejudice and duplication); *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1002-03 (7th Cir. 1996) ("[a] further reason not to permit discovery and hence not to go behind the complaint to find out whether [underlying defendant] is really covered by [insurer's] policy is that discovery might well undermine possible defenses by [underlying defendants] . . . . This analysis confirms the

good sense of the general rule that the insurer's declaratory judgment suit is not a proper vehicle for resolving factual issues in the underlying suit against the insured."). These courts have recognized the principle that while an insurer is entitled to a declaratory judgment action to determine its obligations when coverage is disputed, if the declaratory judgment action overlaps with key issues in the underlying lawsuit, it must be stayed to allow adjudication of the key issues in the underlying lawsuit.

When, as here, there is clear overlap between the issues in the declaratory judgment action and the underlying lawsuit, a stay of the coverage action is warranted. *Montrose*, 6 Cal. 4th at 301 ("To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action."); *see also Foremost-McKesson*, 751 F.2d at 477 ("[P]iecemeal litigation could severely prejudice the rights of one of the parties….[T]here is the real possibility that the two courts might interpret the same standard policy language differently, with the result that [insured] would find itself without sufficient liability insurance coverage from the insurers after years of paying premiums.").

Further, not only does AIG's action bolster the underlying plaintiffs, who will perceive Mr. Cosby as under attack even from his supposed backers, but it splits Mr. Cosby's focus and drains his resources. Such a pernicious result "effectively undercuts one of the primary reasons for purchasing liability insurance." *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979 (1995) (recognizing that forcing an insured to "fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions . . . effectively undercuts one of the primary reasons for purchasing liability

insurance").  Insurers are paid to provide coverage and as a result have a "special relationship" to their insureds under which they have " a duty to defend [the insured] *until the underlying … suit is resolved or the coverage issue can be determined without prejudice to [the insured]."  Nyacol*, 1996 WL 1186779 at * 3 (emphasis added); *see also id* at * 1 (approving of statement that "the insurer was paid to take the risk so that if, between two parties, prejudice due to loss of evidence or otherwise is to be suffered, the insurer must be the one to suffer. It cannot act for its own benefit to the prejudice of its insured.").

Finally, issues regarding Mr. Cosby's alleged conduct—including whether he even knew the underlying plaintiffs—and issues regarding whether allegedly defamatory statements were authorized by Mr. Cosby should be resolved in the underlying lawsuits, rather than in this coverage action.  *See Montrose Chem. Co. v. Superior Court*, 25 Cal. App. 4th 902, 910 (1994) ("If the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage"); s*ee also Aetna*, 889 F. Supp. at 541 (noting that determinations in insurance coverage action are "likely to be binding on the [insured] defendants in the underlying litigation under the doctrines of *res judicata* and/or collateral estoppel").  The risk of inconsistent factual determinations poses "severe prejudice to at least one of the parties."  *S. Union Co.*, 2007 WL 1657427 at * 3 (finding that insurer did not demonstrate sufficient prejudice to warrant proceeding with declaratory judgment coverage issues first).

## III.    CONCLUSION

This Court should decline AIG's request to stay the underlying *Green* lawsuit and instead stay this coverage action in accordance with the *Montrose* doctrine.  AIG has not presented any

authority supporting its request for a stay of the underlying lawsuit, and doing so would cause

irreversible prejudice to AIG's insured.


## REQUEST FOR ORAL ARGUMENT PURSUANT TO RULE 7.1

Mr. Cosby respectfully requests that the Court allow oral argument on this motion.


Dated: November 3, 2015

The Defendant
WILLIAM H. COSBY, JR.
By His Attorneys:


*/s/ Kimberly A. Umanoff*
Kirk A. Pasich, *pro hac vice*
Kimberly A. Umanoff, *pro hac vice*
Liner LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518
(310) 500-3350
kpasich@linerlaw.com
kumanoff@linerlaw.com


*/s/ Francis D. Dibble, Jr.*
Francis D. Dibble, Jr., BBO No. 123220
Jeffrey E. Poindexter, BBO No. 631922
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115-5507
(413) 272-6246
fdibble@bulkley.com
jpoindexter@bulkley.com

## **CERTIFICATE OF SERVICE**

I, Kimberly A. Umanoff hereby certify that on November 3, 2015, I electronically filed the above-referenced document with the Clerk of the United States District Court for the District of Massachusetts by using the ECF system. I certify that all participants in the case are registered ECF users and that service will be accomplished by the ECF system.

*/s/ Kimberly A. Umanoff*

Kimberly A. Umanoff