UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AIG PROPERTY CASUALTY COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-30111-MGM |
| TAMARA GREEN, THERESE | * | |
| SERIGNESE, LINDA TRAITZ, LOUISA | * | |
| MORITZ, BARBARA BOWMAN, JOAN | * | |
| TARSHIS, ANGELA LESLIE, KRISTINA | * | |
| RUEHLI, KATHERINE MAE MCKEE, | * | |
| and WILLIAM H. COSBY, JR., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING
WILLIAM H. COSBY'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR JUDGMENT ON THE
PLEADINGS, AND PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
(Dkt. Nos. 104 and 110)

November 8, 2016

MASTROIANNI, U.S.D.J.

I.     INTRODUCTION

In this action, AIG Property Casualty Company ("AIG") seeks a declaration that it has no

duty to defend or indemnify William H. Cosby, Jr. under two insurance policies in relation to three

defamation cases which are or were also pending in this court: *Green v. Cosby*, Case No. 14-cv-30211-

MGM, *Ruehli v. Cosby*, Case No. 15-cv-13796-MGM, and *McKee v. Cosby*, Case No. 15-cv-30221-

MGM.[1] AIG contends the insurance policies provide no coverage as to the defamation cases

because of exclusions for expenses "arising out of" sexual misconduct. After AIG amended its

---

[1] Although the plaintiffs in *Green* also allege claims for false light and intentional infliction of emotional distress, those claims are derivative of their defamation claims. Accordingly, the court refers to the underlying actions as "defamation cases."

complaint, Cosby filed a motion to dismiss or, in the alternative, for judgment on the pleadings,

asserting the sexual misconduct exclusions do not unambiguously apply to the defamation cases so

as to bar coverage.[2] AIG, for its part, has filed a motion for summary judgment, arguing it is entitled

to affirmative relief as a matter of law based on the sexual misconduct exclusions. For the following

reasons, the court will grant Cosby's motion in part and deny AIG's motion.

## II. BACKGROUND AND PROCEDURAL HISTORY

The following facts come from AIG's amended complaint, attachments thereto, and official

public records in the form of judicial documents. *See Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40,

44 (1st Cir. 2012).[3] AIG issued Massachusetts Homeowners Policy No. PCG 006004261

("Massachusetts Policy") and Personal Excess Liability Policy No. PCG 006235889 ("Excess

Policy") to Cosby. (Dkt. No. 95, Am. Compl. ¶¶ 16, 20.) Both policies were in effect from January 1,

2014 to January 1, 2015. (*Id.* ¶¶ 17, 21.) The policies require AIG to "pay damages [Cosby] is legally

obligated to pay for personal injury or property damage caused by an occurrence covered by this

policy anywhere in the world." (*Id.* ¶¶ 19, 23.)[4] The policies define "personal injury" as including

"[b]odily injury"; "[s]hock, emotional distress, mental injury"; [i]nvasion of privacy"; and

---

[2] The court will treat Cosby's motion as a motion for judgment on the pleadings because he already filed a responsive pleading to the original complaint and AIG's amended complaint did not include substantive "new matter" giving "rise to a defense that did not exist prior to the amendment." *In re Dorsey*, 497 B.R. 374, 380 (Bankr. N.D. Ga. 2013); *see* Fed. R. Civ. P. 12(b); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1361, 1385, 1388 (3d ed.). Rather, AIG merely revised the complaint to track changes to the claims and parties in *Green*, as well as seek a declaration regarding the analogous *Ruehli* and *McKee* cases, to which AIG asserts the sexual misconduct exclusions apply equally. *See AIG Prop. Cas. Co. v. Green*, 172 F. Supp. 3d 468 (D. Mass. Mar. 28, 2016) (discussing inclusion of additional underlying plaintiffs in *Green* as defendants in this action); Dkt. No. 92, Pl.'s Resp. to Ct.'s Inquiry re: Scope of Declaratory Relief and Other Cases (discussing whether amended complaint should also include *Ruehli* and *McKee* cases). Whether Cosby's motion is treated as a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss makes no practical difference, however, because "[t]he standard of review . . . is the same." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007).

[3] These facts do not materially differ from those contained in the parties' Local Rule 56.1 statements of undisputed facts, filed in connection with AIG's motion for summary judgment.

[4] The Excess Policy requires AIG to pay such damages "[i]n excess of damages covered by the required underlying insurance or the Minimum Required Underlying Limit, whichever is greater," thereby providing excess indemnity coverage above the limits of the Massachusetts Policy. (*Id.* ¶ 17.)

"[d]efamation, libel, or slander." (*Id.*, Exs. A and B, at pt. I.) The Massachusetts Policy also requires

AIG to "pay the costs to defend [Cosby] against any suit seeking covered damages for personal

injury or property damage, even if the suit is false, fraudulent, or groundless." (*Id.* ¶ 19.) And the

Excess Policy states AIG "will defend [Cosby] against any suit seeking damages covered by Excess

Liability . . . under this policy and where . . . [t]he underlying insurance has been exhausted by

payment of claims [or] [n]o underlying insurance applies. . . even if the allegations of the suit are

groundless, false, or fraudulent." (*Id.*, Ex. B., at pt. IV.A.)

The Massachusetts Policy contains an exclusion which states that it "does not provide

coverage for liability, defense costs or any other cost or expense for . . . [p]ersonal injury arising out

of any actual, alleged, or threatened by any person: (a) sexual molestation, misconduct or

harassment; . . . or (c) sexual, physical or mental abuse." (*Id.* ¶ 19.) Similarly, the Excess Policy

contains an exclusion stating it "does not provide coverage for liability, defense costs or any other

cost or expense . . . [a]rising out of any actual, alleged or threatened: a. Sexual misconduct,

molestation or harassment . . . or c. Sexual, physical or mental abuse." (*Id.* ¶ 17, Ex. B, at pt. V.B.3.)

The court will refer to these two exclusions as the "sexual misconduct exclusions."

On December 10, 2014, Tamara Green filed a complaint against Cosby for defamation.

(Am. Compl. ¶ 26; *Green v. Cosby*, Case No. 14-cv-30211-MGM, Dkt. No. 1.) An amended

complaint, which added Therese Serignese and Linda Traitz as plaintiffs along with Green, was filed

on January 5, 2015, and a second amended complaint was filed on April 21, 2015. (Am. Compl. ¶ 27;

*Green v. Cosby*, Case No. 14-cv-30211-MGM, Dkt. Nos. 13, 48.) On June 26, 2015, AIG commenced

this declaratory judgment action directed at the *Green* case and the allegations contained in the

second amended complaint therein. (Dkt. No. 1, Compl.)

On November 9, 2015, Kristina Ruehli filed a complaint against Cosby for defamation. (Am. Compl. ¶ 92, Ex. D.)[5] On November 13, 2015, a third amended complaint was filed in the *Green* case, adding as plaintiffs Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie, and adding claims for invasion of privacy (false light) and intentional infliction of emotional distress on behalf of all the plaintiffs. (Am. Compl. ¶ 28, Ex. C.) And on December 21, 2015, Katherine Mae McKee filed a complaint against Cosby for defamation. (Am. Compl. ¶ 100, Ex. E.)[6] The underlying plaintiffs in the *Green*, *Ruehli*, and *McKee* cases alleged that many years ago Cosby sexually assaulted them and they subsequently disclosed the assaults to the public. The underlying plaintiffs further allege that in 2014[7] Cosby, directly or through spokespeople, falsely and publicly denied the accusations, thereby defaming them and, as to the *Green* plaintiffs, placing them in a false light and intentionally inflicting emotional distress. (Am. Compl. ¶¶ 30-105.) AIG filed its amended complaint in this action, seeking declaratory relief as to its duty to defend and indemnify Cosby regarding the three defamation cases, on March 31, 2016.

Meanwhile, on June 26, 2015 (the same day AIG commenced this action), AIG brought a separate declaratory judgment action in the United States District Court for the Central District of California, *AIG Prop. Cas. Co. v. Cosby*, Case No. CV 15-04842-BRO (RAOx) ("California Action"), regarding its insurance obligations as to a similar defamation case filed against Cosby in California

---

[5] After AIG filed its amended complaint, the plaintiff in *Ruehli* voluntarily dismissed that action. (*Ruehli v. Cosby*, Case No. 15-cv-13796-MGM, Dkt. No. 27.) None of the parties have requested that Ruehli be dismissed as a defendant in this action or that the court's ruling on the pending cross-motions be limited to the *Green* and *McKee* cases. The court therefore assumes there is still a live controversy as to the insurance coverage regarding the *Ruehli* case and notes that its analysis on this issue is identical as to all three defamation cases.

[6] McKee subsequently amended her complaint on July 1, 2016. (*McKee v. Cosby*, 15-cv-30221-MGM, Dkt. No. 30.)

[7] Although AIG's amended complaint, relying on the allegations contained in the original complaint in *McKee*, references a date in 2015 when an article containing Cosby's denial was published, that date appears to have been a typographical error in the *McKee* complaint. (Am. Compl. ¶ 104; *McKee v. Cosby*, 15-cv-30221-MGM, Dkt. No. 1 ¶ 25.) In McKee's amended complaint, which was filed after AIG's amended complaint in this action, the publication date has been changed to 2014. (*McKee v. Cosby*, 15-cv-30221-MGM, Dkt. No. 30 ¶ 44.)

state court, *Dickinson v. Cosby*, case no. BC58090. The California Action involves the same

Massachusetts Policy and Excess Policy as in this case, as well as a California Homeowners Policy.

(Dkt. No. 19, Ex. C.) Moreover, the plaintiff in *Dickinson* also claimed that Cosby sexually assaulted

her years ago and that Cosby's public denial of that accusation renders him liable for defamation,

false light, and intentional infliction of emotional distress. (Dkt. No. 111, Ex. A.) AIG claimed in the

California Action, as it does here, that the sexual misconduct exclusions preclude coverage because

the allegedly defamatory statements which form the basis of the claims in *Dickinson* "aris[e] out of"

sexual misconduct. (Dkt. No. 19, Ex. C.)

The court granted Cosby's motion to dismiss in the California Action, holding AIG has a

duty to defend Cosby in *Dickinson* because the sexual misconduct exclusions do not unambiguously

bar coverage. *AIG Prop. Cas. Co. v. Cosby*, 2015 WL 9700994 (C.D. Cal. Nov. 13, 2015). Notably, the

court applied California law to the coverage dispute. It reasoned as follows:

> Here, the policies arose in both California and Massachusetts. However, where the
> applicable rules of law of the potentially concerned jurisdictions do not materially
> differ, the Court may proceed to apply the law of the forum. . . . The party arguing
> that foreign law governs has the burden to identify the applicable law. . . . [AIG] asserts
> that Massachusetts and California law ought to govern this case, but represents that the
> laws of those states do not conflict. Therefore, the Court will apply California law,
> the law of the forum here.

*Id.* at *3 n.2 (internal citations and quotation marks omitted). The court explained that under

California law, "both [AIG's] broad interpretation and [Cosby's] narrow interpretation of 'arising out

of' are reasonable." *Id.* at *5. Under Cosby's narrow interpretation, which the court found supported

by a line of California cases, "the injuries Dickinson allegedly suffered originate from [Cosby's]

statements, which have only an attenuated factual connection with sexual misconduct. Sexual

misconduct may be the subject matter of [Cosby's] statements, but [Cosby's] statements, not his

alleged sexual misconduct directly caused the injury for which Dickinson now seeks relief." *Id.* at *6.

The court also noted that a separate sexual misconduct exclusion in the Excess Policy applicable to

"Limited Charitable Board Directors and Trustees Liability" bars coverage for damage "arising out of, *or in any way involving*, directly or indirectly, any alleged sexual misconduct." *Id.* at *5 (emphasis added). Accordingly, the court explained, if AIG "wished to exclude a claim 'in any way involving' sexual misconduct," which "language is unquestionably broader" than the exclusions at issue, "it could have included such language," and AIG's "decision not to do so suggests that a narrow interpretation" is reasonable. *Id.* Because the "arising out of" language in the sexual misconduct exclusions is "reasonably susceptible to [Cosby's] narrow interpretation, and thus, ambiguous," and "[a]ny ambiguous terms are interpreted in favor of finding coverage," the court concluded AIG had a duty to defend Cosby in the *Dickinson* case. *Id.* at *4, 5-6.

## III. STANDARD OF REVIEW

"When, as now, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is employed as a vehicle to test the plausibility of the complaint, it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Grajales*, 682 F.3d at 44. "[T]o survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion), a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . .'" *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). That said, the pertinent facts are not disputed, and under both California and Massachusetts law (the substantive law the parties assert governs this dispute), interpretation of an insurance policy is a question of law for the court. *See Encompass Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984 (9th Cir. 2014); *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65 (1st Cir. 2012).

## IV. DISCUSSION

Cosby argues this action should be dismissed because the sexual misconduct exclusions do not apply to the underlying claims in the defamation cases or, at least, are ambiguous, in which case

6

the policy language must be construed against the drafter (AIG) and in favor of coverage. AIG

opposes Cosby's motion to dismiss, and seeks summary judgment on its own behalf, on the ground

that the sexual misconduct exclusions clearly bar coverage.

As a preliminary matter, the parties disagree as to which law should apply. Cosby asserts

California law governs because judicial estoppel bars AIG from asserting Massachusetts and

California law are in conflict since, in the California Action, the court relied on AIG's representation

to the contrary. Cosby also argues application of California law is appropriate under applicable

choice-of-law principles. AIG counters that judicial estoppel does not apply because the conditions

for invoking the doctrine are not met. Moreover, AIG argues Massachusetts law governs this

dispute because Cosby's primary residence (covered by the Massachusetts Policy) is in Massachusetts

and the underlying defamation cases are pending here as well.

A.    Choice of Law

    1.    Judicial Estoppel

"Judicial estoppel is an equitable doctrine that 'prevent[s] a litigant from taking a litigation

position that is inconsistent with a litigation position successfully asserted by him in an earlier phase

of the same case or in an earlier court proceeding.'" *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 527

(1st Cir. 2016) (quoting *Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010)).[8] "The doctrine's primary utility is

to safeguard the integrity of the courts by preventing parties from improperly manipulating the

---

[8] The court applies federal law on the judicial estoppel question because the parties rely on federal law. *See RFF Family P'Ship LP*, 814 F.3d at 528 n.5 ("Because [the parties] both seem to assume the application of the federal law of judicial estoppel, we accept the parties' agreement without deciding the issue."); *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32 (1st Cir. 2004) (same). Moreover, the First Circuit has stated, albeit in dicta, that it "would likely reach this same conclusion even without the parties acquiescent behavior," since, as is true in this case, "both the putatively estopping conduct and the putatively estopped conduct occur[red] in a federal case," and "a federal court has a powerful institutional interest in applying federally-developed principles to protect itself against cynical manipulations." *Alternative Sys. Concepts, Inc.*, 374 F.3d at 32; *see also Flores-Febus v. MVM, Inc.*, 45 F. Supp. 3d 175, 178 (D.P.R. 2014) (noting that, "while the First Circuit has not ruled specifically on the issue, every other federal appellate court to have considered the question has held that the application of judicial estoppel in diversity cases implicates 'a strong federal policy' warranting reference to federal, rather than state, principles").

machinery of the judicial system." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st

Cir. 2004). Accordingly, "[c]ourts typically invoke judicial estoppel 'when a litigant tries to play fast

and loose with the courts.'" *RFF Family P'ship, LP*, 814 F.3d at 527-28 (quoting *Perry*, 629 F.3d at 8).

The court is also mindful of "the maxim that '[j]udicial estoppel is applied with caution to avoid

impinging on the truth-seeking function of the court because the doctrine precludes a contradictory

position without examining the truth of either statement." *Perry*, 629 F.3d at 11 (quoting *Teledyne*

*Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)); *see also id.* (quoting *Lowery v. Stovall*, 92 F.3d

219, 224 (4th Cir. 1996) for the proposition that "judicial estoppel is applied in the narrowest of

circumstances").

     The First Circuit has explained that "[t]he contours of the doctrine are hazy, and there is no

mechanical test for determining its applicability"; rather, "[e]ach case tends to turn on its own facts."

*Alternative Sys Concepts, Inc.*, 374 F.3d at 33. Nevertheless, at least "two conditions must be satisfied

before judicial estoppel can attach." *Id.* First, the party's earlier position and later position "must be

directly inconsistent, that is, mutually exclusive." *Id.* Second, the "party must have succeeded in

persuading a court to accept its prior position." *Id.* Moreover, "[w]hile it is not a formal element of a

claim of judicial estoppel, courts frequently consider a third factor: absent an estoppel, would the

party asserting the inconsistent position derive an unfair advantage?" *Id.*; *see also Guay v. Burack*, 677

F.3d 10, 16 (1st Cir. 2012) (identifying as "a third oft-considered factor . . . 'whether the party

seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair

detriment on the opposing party if not estopped,'" but explaining that the First Circuit "generally

[has] not required a showing of unfair advantage"). *But see RFF Family P'ship, LP*, 814 F.3d at 528

(identifying unfair advantage as a third condition "that must be satisfied to establish judicial

estoppel"). "Relatedly, courts often inquire as to whether judicial acceptance of a party's initial

position conferred a benefit on that party." *Alternative Sys. Concepts, Inc.*, 374 F.3d at 33.

The first condition, direct inconsistency between AIG's earlier and later positions, appears satisfied. AIG's position in the California Action was that there is no conflict between California and Massachusetts law in interpreting the policies. Here, by contrast, AIG asserted at the July 26, 2016 hearing that California and Massachusetts law do conflict. Indeed, in its briefs on the cross-motions currently at issue, AIG relies exclusively on Massachusetts law and has not argued that the motion to dismiss in the California Action was wrongly decided under California law.[9]

As to the second condition, the court in the California Action clearly accepted AIG's position. AIG protests that it did not prevail on its claims, since the court granted Cosby's motion to dismiss. To satisfy this second judicial estoppel prong, however, "a party need not show that the earlier representation led to a favorable ruling on the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition." *Perry*, 629 F.3d at 11. Despite ultimately ruling in favor of Cosby, the California court "adopted and relied on" AIG's position that California and Massachusetts law are not in conflict, as it was the entire basis for the court's decision to apply California law.

Nevertheless, even assuming both conditions for judicial estoppel are satisfied, the court declines, in its discretion, to apply the doctrine. There is no evidence that AIG "was attempting to defraud or mislead" either the California court or this court. *Id.* at 13 (explaining that "judicial estoppel is not meant to be a trap for the unwary and should be employed sparingly when 'there is no evidence of intent to manipulate or mislead the courts'" (quoting *Ryan Operations G.P. v. Santiam-*

---

[9] Arguably, however, AIG's broader argument in the California Action—that California and Massachusetts law do not conflict *in construing the phrase "arising out of" expansively*—is not directly inconsistent with its position here. As the court in the California Action acknowledged, AIG asserted California and Massachusetts law applied to the coverage dispute there. *AIG Prop. Cas. Co.*, 2015 WL 9700994, at *3 n.2. AIG cited both California and Massachusetts case law in its opposition brief and asserted that under both states' laws, the sexual misconduct exclusions should be read broadly to preclude coverage. (Dkt. No. 111, Ex. D.) In this action, although relying only on Massachusetts law, AIG also asserts the sexual misconduct exclusions should be read broadly and preclude coverage.

*Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996))). Rather, it appears the statement in the

California action was, at worst, an inartful way of explaining that, in AIG's view, the same result

obtains under either California or Massachusetts law: coverage is barred under the sexual

misconduct exclusions. *See supra* footnote 9; *cf. New Hampshire v. Maine*, 532 U.S. 742, 753 (2001)

("[I]t may be appropriate to resist application of judicial estoppel 'when a party's prior position was

based on inadvertence or mistake.'" (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26,

29 (4th Cir. 1995))). Moreover, under the third factor for invoking judicial estoppel (although

arguably not a "formal" requirement), there is no unfair advantage to AIG or detriment to Cosby in

permitting AIG to argue in this action that the laws of California and Massachusetts conflict. The

California court's acceptance of AIG's position ultimately conferred no benefit to AIG, as the court

held that under California law, AIG had a duty to defend. And in this action, as discussed below, the

court finds in favor of Cosby under Massachusetts and California law as well.[10]

    2.    <u>Choice of Law Analysis</u>

    Where, as here, a federal court exercises diversity jurisdiction, "[t]he question of which

state's law applies is resolved using the choice of law analysis of the forum state—in this case,

Massachusetts." *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004). However, "[t]he

first step in a choice of law analysis is to determine whether an actual conflict exists between the

substantive laws of the interested jurisdictions." *Id.* The First Circuit has repeatedly explained that

when "the outcome is the same under the substantive law of either jurisdiction," there is no actual

conflict and a court "need not resolve the [choice-of-law] issue." *Lambert v. Kysar*, 983 F.2d 1110,

1114 (1st Cir. 1993); *see also Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005);

*Steinke v. Sungard Fin. Sys., Inc.*, 121 F.3d 763, 775 (1st Cir. 1997); *Royal Bus. Grp., Inc. v. Realist, Inc.*,

---

[10] Even if the court applied judicial estoppel here, it ultimately would have no impact because, as discussed below, the court agrees with AIG's original position in the California Action that the laws of California and Massachusetts are not in actual conflict.

933 F.2d 1056, 1064 (1st Cir. 1991). That is the situation here. Under either California or

Massachusetts law, the court concludes AIG owes Cosby a duty to defend under the policies.

Accordingly, the court will not "make a formal choice of law." *Royal Bus. Grp., Inc.*, 933 F.3d at

1064.[11]

B.     <u>Duty to Defend</u>

       1.     <u>California Law</u>

       Applying California law, the court agrees with Judge O'Connell's persuasive analysis in the

California Action. In particular, she identified a group of California cases which "maintain that to

'arise out of' excluded conduct, the defamatory remark at issue must have been part of or directly

and proximately resulted from the excluded conduct." *AIG Prop. Cas. Co.*, 2015 WL 9700994, at *5

(citing *HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 647 (9th Cir. 1997), *Charles E. Thomas*

*Co. v. Transamerica Ins. Grp.*, 62 Cal. App. 4th 379, 383 (Cal. Ct. App. 1998), and *Golden Eagle Ins. Corp.*

*v. Rocky Cola Café, Inc.*, 94 Cal. App. 4th 120, 216-27 (Cal. Ct. App. 2001)); *see also Peterborough Oil Co.,*

*Inc. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 239 n.8 (D. Mass. 2005) ("[U]nder California law, . . .

courts have interpreted the phrase 'arising out of' to require a much more direct causal connection,

one more akin to proximate cause, than required under Massachusetts law." (citing *HS Servs.*, 109

F.3d at 647)). Under that construction of "arising out of," Cosby's alleged sexual misconduct is too

far removed from the alleged defamatory statements, because the denials were not "part of" and did

---

[11] The court notes, however, that if a definitive choice of law were necessary, it would apply Massachusetts law. *See, e.g.,* *Steinke*, 121 F.3d at 775-76 (noting the court "believe[d] Pennsylvania rather than Massachusetts law governs the promissory estoppel claim," but declining to resolve the choice of law question because the outcome was the same, and proceeding to apply both Pennsylvania and Massachusetts law to the issue). In accordance with section 193 of the Restatement (Second) Conflict of Laws, which Massachusetts courts follow in the insurance context, the principal location of the insured risk is Cosby's Massachusetts home, in that it is the principal "object . . . which is the subject matter of the insurance." *Restatement (Second) Conflict of Laws* § 193 (1971), cmt. b. Alternatively, in the more general sense, the insured risk at issue in this case is Cosby's personal liability, and he is domiciled in Massachusetts. *See HDI-Gerling* *Am. Ins. Co. v. Navigators Ins. Co.*, 2015 WL 5315190, at *4 (D. Mass. Sep. 11, 2015) ("Massachusetts courts have held that where the insured risk can implicate multiple states, other governing principles of choice of law generally point to the law of the domicile of the policyholder.").

not "directly and proximately result[] from" the sexual misconduct. *See AIG Prop. Cas. Co.*, 2015 WL 9700994, at *5-6. Accordingly, since Cosby's interpretation of the sexual misconduct exclusions is reasonable under that analysis, California law mandates that AIG has a duty to defend.

      2.    Massachusetts Law

Under Massachusetts law,

> [a]n insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms. . . . In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage. However, when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant. The nature of the claim and not the ultimate judgment against the insured triggers the duty to defend even though the plaintiff may not succeed and the claim may, in fact, be weak or frivolous.

*Utica Mut. Ins. Co. v. Herbert H. Landry Ins. Agency, Inc.*, 820 F.3d 36, 41 (1st Cir. 2016) (quoting *Metro. Prop. & Cas. Ins. Co. v. Morrison*, 951 N.E.2d 662, 667 (Mass. 2011)).

      The insured retains "the initial burden of establishing coverage, while the insurer bears the burden on exclusions from coverage." *Id.* In this case, it is undisputed that the Massachusetts Policy and Excess Policy provide coverage, absent an exclusion, for the types of claims at issue in the defamation cases. AIG instead relies on the sexual misconduct exclusions. The court therefore must determine whether the underlying claims unambiguously "aris[e] out of" sexual misconduct under Massachusetts law, such that coverage is barred and AIG owes no duty to defend Cosby in the defamation cases.

      In doing so, the court interprets the policies "in the same way as ordinary contracts." *Id.* at 42. Specifically, the court

> must construe the words of the policy in their usual and ordinary sense. Every word must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable. If in doubt, [the court] consider[s] what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.

> When confronting ambiguous language, [the court] construe[s] the policy in favor of the insured and against the drafter, who is invariably the insurer, unless specific policy language is controlled by statute or prescribed by another authority. This rule of construction applies with particular force to exclusionary provisions.

*Id.* at 42 (quoting *Metro. Prop & Cas. Ins. Co.*, 951 N.E.2d at 671; *see also Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 545 N.E.2d 1156, 1159 (Mass. 1989) ("Where the language permits more than one rational interpretation, that most favorable to the insured is to be taken." (quoting *Palmer v. Pawtucket Mut. Ins. Co.*, 225 N.E.2d 331, 333 (Mass. 1967)).

The phrase "arising out of" has been construed in a number of cases. "Under Massachusetts law, 'arising out of' 'indicates a wider range of causation than the concept of proximate causation in tort law.'" *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lins Ins. Co.*, 220 F.3d 1, 7 (1st Cir. 2000) (quoting *Rischitelli v. Safety Ins. Co.*, 671 N.E.2d 1243, 1245 (Mass. 1996)). "[I]t falls somewhere between proximate and 'but for' causation—an intermediate causation standard." *Id.* "Nevertheless, despite the broad construction that must be given to the expression, it does not capture all events between which a causal connection may be drawn, no matter how tenuous." *Peterborough Oil Co., Inc.*, 397 F. Supp. 2d at 238 (citing *Rischitelli*, 671 N.E.2d at 1245). Rather, "[f]or an injury to 'arise out of' [excluded conduct], there must be a sufficiently close relationship between the injury and the [excluded conduct]." *Ruggerio Ambulance Serv., Inc. v. Nat'l Grange Ins. Co.*, 724 N.E.2d 295, 299 (Mass. 2000); *see also Commerce Ins. Co. v. Ultimate Livery Serv., Inc.*, 897 N.E.2d 50, 61-62 (Mass. 2008) ("There is no bright line test . . . . Whether a particular injury is sufficiently related to [excluded conduct] must be decided on a case-by-case basis and requires a judgment call . . . as to where along a continuum of causation fall the facts of each case." (internal citation and quotation marks omitted)). Moreover, the court must "consider the 'source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint [of the underlying civil action].'" *Brazas Sporting Arms, Inc.*, 220 F.3d at 7 (quoting *Bagely v. Monticello Ins. Co.*, 720 N.E.2d 813, 817 (Mass. 1999)).

13

Here, the court concludes that, as applied to these facts, the sexual misconduct exclusions are at least ambiguous. *Cf. Peterborough Oil Co.*, 397 F. Supp. 2d at 242 ("As applied in these circumstances, therefore, the phrase 'employment-related act or omission' is inherently ambiguous."). Critically, the sources of the underlying plaintiffs' injuries are the allegedly defamatory statements issued by Cosby or his agents, not the sexual misconduct itself. While no doubt related to and setting the stage for the defamation claims, the alleged sexual misconduct is multiple steps removed from the defamatory injury-causing statements. The underlying plaintiffs allege: (1) Cosby sexually assaulted them during incidents spanning from the 1960s to the 1990s; (2) they publicly disclosed the allegations as early as 2005 (but mostly in 2014); and, finally, (3) Cosby publicly denied the allegations in 2014, thereby branding them as liars and causing injury. Arguably, therefore, the defamation is sufficiently independent of the sexual misconduct such that the exclusions do not apply.

In this regard, the facts here are somewhat comparable to those in *Rischitelli*, where the plaintiff was the victim of "road rage"; he was injured during a physical attack by another driver after a car accident between the two. *Rischitelli*, 671 N.E.2d at 1244. Although the policy provided coverage for "bodily injury . . . arising out of the ownership, maintenance or use of an auto," the Supreme Judicial Court held that the policy did not cover the plaintiff's injuries because "[t]he battery . . . was sufficiently independent of the motor vehicle accident." *Id.* at 1244, 1246; *see Brazas Sporting Arms, Inc.*, 220 F.3d at 7 ("Although the issue before the court [in *Rischitelli*] related to policy coverage rather than to an exclusion provision, the court's construction of the expression 'arising out of' is duly applicable to this case."). As the First Circuit cogently explained, "in *Rischitelli* the battery and the car accident were separate and distinct events; the car accident merely preceded, and set the context for, the battery." *Brazas Sporting Arms, Inc.*, 220 F.3d at 8; *see also Peterborough Oil Co., Inc.*, 397 F. Supp. 2d at 243 ("While it is true that the termination and the malicious prosecution were

based on many of the same facts . . . , it does not follow that the latter arose out of the former.").
The same is true under Cosby's reasonable interpretation of the sexual misconduct exclusions: The
sexual misconduct "preceded, and set the context for," the defamation, but nonetheless the two
remain "separate and distinct events." *Brazas Sporting Arms, Inc.*, 220 F.3d at 8.

Most importantly, other exclusionary policy provisions cast doubt on AIG's broad
interpretation of the sexual misconduct exclusions. *See Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777,
785 (1st Cir. 2011) ("In interpreting contractual language, [courts] consider the contract as a whole.
Its meaning cannot be delineated by isolating words and interpreting them as though they stood
alone. . . . Not only must due weight be accorded to the immediate context, but no part of the
contract is to be disregarded." (internal citation and quotation marks omitted)). In particular, as
noted in the California Action, a separate exclusion in the Excess Policy applicable to "Limited
Charitable Board Directors and Trustees Liability" bars coverage for damage "arising out of, or in
any way involving, directly or indirectly, any alleged sexual misconduct." (Am. Compl., Ex. B, at pt.
V.D.10.) If AIG wanted to exclude from coverage all expenses merely "involving" or "indirectly
arising out of" sexual misconduct, it could have used that language in the sexual misconduct
exclusions at issue. *See Vermont Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 44 (1st Cir. 2013) ("Vermont
Mutual drafted the policies at issue here. If it wanted to exclude from coverage all injuries *occurring* at
an owned premises that it did not insure, it would have been child's play to say so.").

Therefore, the court cannot say, looking *ex ante* at the policy language from the perspective
of a reasonable insured, that it was the intent of the parties to exclude the kinds of claims brought in
the defamation cases. That is all that is required for the court to rule on the duty to defend issue; if
Cosby's interpretation is reasonable, and thus the language is at least ambiguous under these
circumstances, he prevails. *See Utica Mut. Ins. Co.*, 820 F.3d at 45 ("At the very least, this is a

reasonable construction. Even assuming that a more expansive construction is also reasonable, Massachusetts law requires us to adopt the construction more favorable to the insured . . . .").

C.      Duty to Indemnify

The court's conclusion as to AIG's duty to defend does not end matters. In this action, AIG seeks a declaration that it has no duty to defend *or indemnify* Cosby regarding the defamation cases. Despite this posture, the parties have not explicitly addressed the duty to indemnify in the pending motions, perhaps assuming that the court's ruling on the duty to defend would apply equally to the duty to indemnify. This court, however, does not view such an assumption to be well-founded.

Under both Massachusetts and California law, an insurer's duty to indemnify is independent from, and narrower than, its duty to defend. *See Metro. Prop. & Cas. Ins. Co.*, 951 N.E.2d at 667; *Certain Underwriters at Lloyd's of London v. Superior Court*, 16 P.3d 94, 101-02 (Cal. 2001). This is because "[t]he duty to indemnify, unlike the duty to defend, is determined by the facts as they unfold at trial or in a settlement agreement, rather than simply the pleadings." *House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., Inc.*, 775 F. Supp. 2d 302, 310 (D. Mass. 2011). Accordingly, the duty to indemnify "arises only after the insured's liability has been established." *Wilkinson v. Citation Ins. Co.*, 856 N.E.2d 829, 836 (Mass. 2006); *see Certain Underwriters at Lloyd's of London*, 16 P.3d at 102 ("[T]he duty to indemnify can arise only after damages are fixed in their amount."). And although an insurer necessarily owes no duty to indemnify if it has no duty to defend (since the duty to defend is broader than the duty to indemnify), the inverse is not necessarily true. *See Certain Underwriters at Lloyd's of London*, 16 P.3d at 102; *Bagley*, 720 N.E.2d at 817. "Where there is a duty to defend, there *may be* a duty to indemnify," but there may not be, depending on how the facts develop. *Certain Underwriters at Lloyd's of London*, 16 P.3d at 102 (emphasis in original); *see Ruggerio Ambulance Serv., Inc.*, 724 N.E.2d at 300 ("Despite this duty to defend, National Grange does not have a duty to indemnify.").

Accordingly, since the underlying defamation cases have not yet been resolved (aside from *Ruehli*), "[t]he issue of indemnification must await the completion of trial" or settlement. *Newell-Blais Post # 443 v. Shelby Mut. Ins. Co.*, 487 N.E.2d 1371, 1374 (Mass. 1986). The parties are therefore directed to confer and file a joint status report within thirty days of this order stating their positions, in light of this ruling, regarding the appropriate procedure for resolving the duty to indemnify, including whether and how they wish to proceed with this action. The parties are further directed to confer as to the possibility of adopting the procedure used in *Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 152 F. Supp. 3d 15, 20 (D. Mass. 2015), where the court "dismiss[ed] the claims seeking declaratory judgment regarding indemnification without prejudice to the filing of a new action should subsequent developments justify it."

V.  CONCLUSION

For the foregoing reasons, the court ALLOWS Cosby's motion for judgment on the pleadings, in part, insofar as it seeks a judgment that AIG owes Cosby a duty to defend. (Dkt. No. 110.) The court also DENIES AIG's Motion for Summary Judgment. (Dkt. No. 104.)

In addition, the parties are hereby ORDERED to file a joint status report within thirty days discussing their positions regarding the appropriate procedure, if any, for resolving the duty to indemnify.

It is So Ordered.

    _/s/ Mark G. Mastroianni_____
    MARK G. MASTROIANNI
    United States District Judge